[No. 32666.  *En Banc.*  April 9, 1954.]

JESSIE FLOYD, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*, UNITED STATES PLYWOOD CORPORATION, *Appellant*.[1]

[1]Reported in 269 P. (2d) 563.

*McMicken, Rupp & Schweppe,* for appellant.

*Walthew, Oseran & Warner,* for respondent Floyd.

*Zabel & Poth* (by *Grosvenor Anschell.*), and *L. Presley Gill, amici curiae.*

DONWORTH, J.—The sole question presented in this action is whether § 15 of chapter 225, Laws of 1951, p. 691 (RCW 51.52.115), which provides for a review of decisions of the board of industrial insurance appeals by a trial *de novo* in superior court, is unconstitutional as an attempt to delegate to the judiciary a purely legislative or administrative function.

Appellant, United States Plywood Corporation, the employer of respondent Floyd, appeals from a judgment of the superior court for King county, entered on a jury verdict. The judgment ordered:

" . . . that the plaintiff do have and recover of and from the defendant, Department of Labor and Industries, in the sum of 35 percent for combined loss of hearing. . . ."

Two *amici curiae* representing labor unions have filed briefs in support of the judgment for respondent Floyd.

This appeal is here upon an agreed statement of facts, which may be summarized as follows:

Respondent, while an employee of appellant, sustained an industrial injury in the course of his extrahazardous employment. The board of industrial insurance appeals sustained an order of the supervisor of industrial insurance awarding respondent compensation based on a permanent partial disability equivalent to twenty-five per cent of the maximum allowable for unspecified disability. Respondent appealed to the superior court. A jury was summoned to hear the appeal.

At the opening of respondent's evidence, and at the conclusion of all of the evidence, appellant demurred to the evidence, challenged its sufficiency, and moved to dismiss, contending that RCW 51.52.115, governing appeals from the board of industrial insurance appeals, was an unconstitutional delegation of legislative or administrative power to the judiciary. Appellant argued that, since there was no proof that the board acted illegally, arbitrarily, and capriciously, the appeal could not be maintained.

The court overruled the demurrer and denied the challenge and motion and submitted the case to the jury. The instructions to the jury advised the jurors that they could find that the board of industrial appeals was wrong in its decision awarding respondent a twenty-five per cent disability rating if, in the opinion of the jurors, the evidence in the board's record. "preponderated" against the findings of the board.

Appellant requested the court to instruct the jury that:

"You are instructed that, unless you find that the decision of the Board of Industrial Insurance Appeals was arbitrary and capricious and wholly unsupported by any evidence whatsoever, your verdict must be for the defendant."

The trial court refused to give this instruction.

By its verdict, the jury found that the decision of the board of industrial insurance appeals was wrong, and that respondent had suffered a thirty-five per cent disability instead of only twenty-five per cent, as the board had found. Judgment was entered on the verdict.

Appellant's three assignments of error raise the single question heretofore stated relating to the constitutionality of RCW 51.52.115, which provides that on an appeal from a decision of the board of industrial insurance appeals:

" . . . The hearing in the superior court shall be *de novo*, but the court shall not receive evidence or testimony other than or in addition to, that offered before the board or included in the record filed by the board in the superior court. . . ."

Appellant relies principally on our decision in *Household Finance Corp. v. State*, 40 Wn. (2d) 451, 244 P. (2d) 260, and asserts that this court must, necessarily, either reverse the judgment in this case or overrule the *Household Finance* case. Therefore, we shall analyze that case in some detail.

The plaintiff in that case had appealed to the superior court from an order of the supervisor of banking denying its applications for licenses for two additional places of business under the small loan act (Laws of 1941, chapter 208, p. 609). The statute provided that on such an appeal "A trial shall be had in said Superior Court *de novo*."

The plaintiff there took the position that by a trial *de novo* was meant a trial after which, without regard to the supervisor's order, the superior court could decide upon the evidence presented at the trial whether or not the licenses should be issued. Defendant contended that the court's inquiry was "limited to whether or not the supervisor had abused his discretion and had acted arbitrarily or capriciously" in denying the license applications.

The trial court held that, despite the language of the statute providing for a trial *de novo*, the scope of its inquiry was limited to determining whether the supervisor had acted arbitrarily, capriciously, or contrary to law.

In affirming the trial court, this court said:

"The legislature in enacting this statute expressed dissatisfaction with what it may have considered to be prior judicial abdication in reviewing the orders of administrative boards and commissions, which have been uniformly upheld in the absence of a showing that they were arbitrary, capricious, or contrary to law.

"We are convinced that the legislature, whether or not it was dissatisfied with the application of the arbitrary or capricious test, with its minimum of judicial review to determine the validity of administrative action, has attempted to place in the superior court for Thurston county powers with which it cannot constitutionally be invested.

"It seems unnecessary to labor the fundamental doctrine of the constitutional division of powers and the reasons therefor.

"We recognize that definite and analytical lines marking the separation of powers have not been and cannot be drawn. There is necessarily some mingling and overlapping of powers between the three separate departments of our government. [Citing cases.] The separation of governmental powers

" ' . . . is not a doctrinaire concept to be made use of with pedantic rigor. There must be sensible approximation, there must be elasticity of adjustment, in response to the practical necessities of government, which cannot foresee today the developments of tomorrow in their nearly infinite variety.' Mr. Justice Cardozo in his dissenting opinion in *Panama Refining Co. v. Ryan*, 293 U. S. 388, 79 L. Ed. 446, 55 S. Ct. 241.
It is the fusion of the different types of governmental power to deal with specific problems which has resulted in the development of the administrative process. Schwartz, American Administrative Law 18.

"However, we are not here concerned with a twilight-zone situation. The licensing and regulation of small loan companies . . . is . . . *essentially a legislative and administrative function.* [Citing cases.]

"It is clear that no 'elasticity of adjustment' can make the determination relative to the issuance of a license to operate a small loan business *essentially or primarily a judicial power.* If the statute had provided that applications for such licenses should be made to the superior court for Thurston county in the first instance, and had thereby charged that court with the responsibility of determining whether or not such licenses should issue, it would be agreed by everyone that the statute had imposed a nonjudicial power upon the court and that the portion of the statute so providing was unconstitutional. The addition of another step (original application to the supervisor of banking) does not place that determination any more within the scope of judicial power if, when the matter comes to the court, it is to be disposed of in the same manner as though it had origin-

ated there and without regard to the action of the supervisor from which the appeal is taken.

"We are constrained to hold that the portion of Rem. Supp. 1941, § 8371-23, which purports to vest in the superior court for Thurston county the right to reverse on a trial *de novo* a decision of the supervisor with reference to the granting of such a license and, in effect, to substitute its judgment for that of the supervisor as to whether or not a license should issue, is unconstitutional as an attempt to vest a nonjudicial power in a constitutionally created court. We must reject this expansion of the court's power as firmly as we would resist a reduction of its rightful authority. [Citing cases.]" (Italics ours.)

A critical analysis of our opinion in the *Household Finance* case discloses that we there decided that the licensing and regulation of small loan companies is *essentially a legislative and administrative function* and *not essentially or primarily a judicial function.* We then held that, since the administrative agent (the supervisor of banking) was given the authority under the small loans act to exercise his discretion in an essentially legislative or administrative function, the superior court had no authority, despite the statute, to review the exercise of that discretion except to determine whether the supervisor had acted in an arbitrary, capricious, or illegal manner.

■ We did *not* decide in *Household Finance*—and the case cannot be considered as authority for the position—that *all* administrative agencies exercise essentially legislative and administrative functions and thus their decisions are not reviewable in a court of law except to determine whether their orders are arbitrary, capricious or illegal. Under the doctrine of *stare decisis,* it would be impossible for this court to set a precedent to be applied to *all* administrative agencies in a case dealing with an appeal from a decision of only *one* administrative body. The doctrine means no more than that the rule laid down in any particular case is applicable *only to the facts in that particular case or to another case involving identical or substantially similar facts.*

Appellant asserts, however, that this court *indicated* in

*Household Finance* that *all* administrative bodies would be governed by the rule announced in that decision. As authority for the foregoing assertion, appellant relies on this paragraph of the decision:

"There is language in *Morgan v. Department of Social Security*, 14 Wn. (2d) 156, 127 P. (2d) 686 (1942), from which it can be argued—and appellant does so argue—that we there upheld the equally broad appeal provision contained in initiative measure No. 141 (Laws of 1941, chapter 1, p. 3, particularly § 9; Rem. Supp. 1941, § 9998-34 *et seq.*, particularly § 9998-42), saying that it was not unconstitutional as purporting to invest the court with executive powers. *Actually, we held that the department of social security had not acted illegally, arbitrarily or capriciously in determining the amounts the appellants were to receive as senior citizens.*" (Italics ours.)

Our analysis of the *Morgan* case was for the purpose of pointing out that the decision there did not conflict with our holding in *Household Finance.* The most that can be said for the language used is that we indicated that *the scope of review on an appeal from a decision of the director of social security* had been limited to a determination of whether the director had acted illegally, arbitrarily, or capriciously. We reached exactly the same conclusion in analyzing the *Morgan* case in *Robinson v. Olzendam*, 38 Wn. (2d) 30, 227 P. (2d) 732, in which we construed the appeal provisions of initiative No. 172 (Rem. Supp. 1949, § 9998-33a *et seq.*), governing allowances of senior citizen grants.

Despite appellant's argument to the contrary, the italicized sentence in the foregoing analysis of the *Morgan* case cannot be considered as indicating either expressly or impliedly that this court thereby intended to announce a rule of limited review applicable to *all* administrative decisions. To urge such a contention is to ignore the limitations of the doctrine of *stare decisis*, under which a precedent set in an earlier case is binding on the court only "in subsequent cases where the very point is again in controversy" and where the "facts are substantially the same." Black's Law Dictionary (4th ed.), p. 1577.

Our decision in *Household Finance* can be considered a precedent binding on all cases involving appeals to the courts from administrative decisions *only if* all administrative bodies act in substantially the same manner so it could be said that there is no distinction between the functions of one administrative agency and the functions of all other administrative bodies.

Recognizing the problem posed by the doctrine of *stare decisis*, appellant's position on this appeal is that there is no valid ground for any distinction between the decisions rendered by one administrative agency and the determinations of all other administrative bodies. Either *all* administrative rulings may be reviewed *de novo* by the courts, or else *none* of them can be reviewed *de novo*, appellant contends.

In its brief, appellant puts the issue in this form:

"The question before this court is one of constitutional *judicial power*. Patently, a court cannot have more or less *judicial power* under the state constitution depending upon the *nature* of the administrative act sought to be reviewed. The *judicial power* does not and cannot fluctuate according to the subject matter of the *de novo* administrative review which confronts it. *Judicial power* is a constant—it does not rise and fall, as the tide. Since the court has interpreted the *Morgan* case as holding that a determination of the amount of an award to senior citizens by the appropriate administrative agency may be reviewed judicially only for arbitrary or capricious or illegal action (want of substantial evidence or other illegality) then, *a fortiori*, the determination of an award by another administrative department of the state government—this time to an injured workman—can under this court's carefully considered pronouncement be the subject of *judicial review* only in the event of illegality, arbitrariness or caprice."

Our examination of the authorities bearing on this problem convinces us that the weight of authority is against appellant's position that there is no valid distinction between the functions of different administrative agencies. Many cases hold that some administrative bodies perform functions which are judicial or quasi-judicial while other agencies perform essentially legislative or quasi-legislative or administrative functions.

Among the cases holding that an administrative body can exercise judicial or quasi-judicial powers are the following: *Western Metal Supply Co. v. Pillsbury,* 172 Cal. 407, 156 Pac. 491; *French v. Rishell,* 40 Cal. (2d) 477, 254 P. (2d) 26; *Breimhorst v. Beckman,* 227 Minn. 409, 35 N. W. (2d) 719. In each of these cases, the administrative agency which was held to be exercising judicial or quasi-judicial powers was created for the purpose of making awards to injured workmen under workmen's compensation or industrial insurance laws.

Cases which have held that certain other administrative bodies performed essentially legislative or administrative functions include *Household Finance, supra,* and *Federal Radio Comm. v. General Electric Co.,* 281 U. S. 464, 74 L. Ed. 969, 50 S. Ct. 389; *Keller v. Potomac Electric Power Co.,* 261 U. S. 428, 67 L. Ed. 731, 43 S. Ct. 445.

In *State v. Huber,* 129 W. Va. 198, 40 S. E. (2d) 11, 168 A. L. R. 808, the supreme court of West Virginia was asked to decide whether the legislature could constitutionally vest in the courts the power to revoke the license of a retail dealer in beer. In deciding that such a function could not be delegated to the judiciary, the court said:

"Unquestionably, the power of regulation of public utilities, the licensing of businesses of all kinds, the regulation of such businesses, the general control thereof, including the power of revoking licenses or permits issued in connection therewith, *is a legislative power*." (Italics ours.)

Text writers also recognize the distinction between the different functions performed by different administrative agencies. In Stason, Cases and Other Materials on Administrative Tribunals, p. 81, we find the distinction, and the legal consequences flowing therefrom, set out thus:

"We find numerous other points in the law at which it becomes desirable, if not necessary, to determine whether the function being performed [by an administrative agency] is 'judicial,' 'legislative' or 'administrative.' For example, we find that the power of subpoena and the use of compulsory investigatory processes take on a different complexion in the case of 'judicial' action than in the case of action lying in either of the other categories. Again, we discover that

the *method* of securing judicial redress from administrative action differs with the type of function involved. . . . Furthermore, the nature of the administrative action may have its bearing upon the *scope* of judicial review, i.e., the extent to which the court will explore and overhaul the conclusions reached by the administrative authorities upon the issues decided by them.

"So for these reasons, among others, it becomes necessary and desirable to distinguish as well as may be between the so-called judicial, legislative and administrative functions performed by administrative officers."

This statement, it will be noticed, completely contradicts appellant's assertion that the judicial power of courts to review administrative determinations cannot fluctuate according to the subject matter of the administrative review confronting the court in a particular case.

The report of the American Bar Association's special committee on administrative law, 58 A. B. A. Rep. 407, 410, classified administrative agencies according to the nature of the particular function performed by each. The committee distinguished between functions and said:

"In general, it may be said that administrative law results from the reposing of what are essentially legislative or judicial functions (or both) in an official or board belonging to the executive branch of the government or in an independent official or board."

Thus it is clear that courts, text writers, and even a special American Bar Association committee do recognize a distinction between "legislative" and "judicial" functions performed by different administrative officers or bodies.

Furthermore, despite appellant's assertion that the "judicial power does not and cannot fluctuate according to the subject matter of the *de novo* administrative review which confronts it," it is apparent both from the decided cases and from the text books that the scope of judicial review of the actions of administrative agencies *does* vary with the subject matter of the review or the function of the agency. *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67; *Crowell v. Benson*, 285 U. S. 22, 76 L. Ed. 598, 52 S. Ct. 285; Uhler, Review of Administrative Acts, 178.

Our own decision in the *Household Finance* case likewise is an example of how the scope of permissible judicial review is governed by the subject matter or function of the administrative agency.

In support of its contention that judicial power is constant and cannot vary with the subject matter of the administrative determination, appellant relies upon three decisions of this court: *Household Finance, supra*; *Morgan, supra*; and *State ex rel. Tidewater-Shaver Barge Lines v. Kuykendall*, 42 Wn. (2d) 885, 259 P. (2d) 838. The *Household Finance* and *Morgan* cases do not sustain appellant's contention, as we have already pointed out in our discussion of those cases. *State ex rel. Tidewater-Shaver Barge Lines v. Kuykendall, supra*, involved an appeal to the superior court from a decision of the public service commission establishing transportation rates for bulk petroleum products. In that case, this court said:

"The power to fix rates is a legislative and not a judicial power."

Consequently, that case falls in the same category with the *Household Finance* and *Morgan* cases and does not support appellant's position that all administrative agencies act in essentially the same manner so that the scope of judicial review of their decisions must always be the same.

█ Without belaboring the point further, we hold that there is a distinction between the types of decisions rendered by different administrative agencies and that some such agencies perform judicial or quasi-judicial functions while others do not.

The remaining question is whether the determinations made by the board of industrial insurance appeals are essentially legislative or administrative or are essentially judicial or quasi-judicial. If the board performs functions essentially legislative or administrative, under *Household Finance* the superior court did not have authority to review the board's decision on the facts and substitute its judgment for that of the board. But if the board's functions are essentially or primarily judicial, the statute under consider-

ation giving the court authority to try the case *de novo* on the facts and law was constitutional, and the trial court did not err in denying appellant's challenge to the sufficiency of the evidence and in instructing the jury in the manner heretofore stated.

■ When courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test, mentioned in *Household Finance*, is whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. *Old Colony Trust Co. v. Commissioner of Internal Revenue*, 279 U. S. 716, 73 L. Ed. 918, 49 S. Ct. 499; *State ex rel. Attorney General v. Hawkins*, 44 Ohio St. 98, 5 N. E. 228, 42 Am. Jur. 368, Public Administrative Law, § 60, and cases cited therein.

■ The classic statement setting out the abstract test to be applied by courts in distinguishing the judicial power from legislative power when examining administrative agencies was made by Justice Holmes speaking for the court in *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67. He there said:

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power."

■ In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer, board, or agency which performs it, that determines its character as judicial or otherwise. *Prentis v. Atlantic Coast Line Co., supra.* This court, as long ago as 1901, reached the

same conclusion in *Selde. v. Lincoln County*, 25 Wash. 198, 65 Pac. 192.

When we apply the test mentioned in the *Household Finance* case (whether the court could have been charged originally with the duty of determining the facts which the board of industrial insurance appeals found) we conclude from the history of workmen's compensation acts in this and other jurisdictions that the court could have been given the duty of determining whether respondent was injured while acting within the scope of his employment and adjudicating the extent of his injuries.

In support of that conclusion, we note that in six states and the territory of Alaska the courts directly administer the workmen's compensation laws, performing the functions which appellant here contends are not judicial and cannot be delegated to the courts in this state. The states which still provide for administration of their workmen's compensation acts by the courts are Alabama, Louisiana, New Hampshire, New Mexico, Tennessee, and Wyoming.

Furthermore, in England, where the first workmen's compensation act was enacted in 1897 and then revised by the workmen's compensation act of 1906, the act *is now and always has been administered through the courts.* Dodd, Administration of Workmen's Compensation, 63; Knowles, Workmen's Compensation, 267. Since the English acts preceded the first American workmen's compensation acts,

"The American compensation acts contain many of the essential features and phraseology of the British and Canadian acts, so that the British and Canadian decisions interpreting their own acts often throw light on the interpretation of the American acts." I Schneider, Workmen's Compensation Text (Perm. ed.) 25, § 9.

Consequently, we conclude that the courts in this state could have been charged originally with the duty of finding the facts which the board of industrial insurance appeals found in this case.

A second test is whether the function of the board is one that the courts historically had performed prior to the creation of the agency.

Prior to 1911, when the workmen's compensation act was created by chapter 74, Laws of 1911, p. 345, many of the functions which were absorbed by the industrial insurance department in its appointed task of making workmen's compensation awards had been performed by the courts in tort actions by injured workmen against their employers. One of the principal challenges to the constitutionality of the workmen's compensation act in this state and elsewhere was based on a contention that the act invaded the province of the courts by abolishing the right of trial by jury. *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101; *State v. Mountain Tbr. Co.*, 75 Wash. 581, 135 Pac. 645.

This court in the cited cases recognized that the workmen's compensation act invaded *a field that theretofore had been wholly in the province of the courts*, but held that under the police power of the state such an invasion was permissible, and that the state had a right to abrogate the right to trial by jury as provided in the 1911 act.

Under the 1911 act, appeals from decisions of the industrial insurance department were made directly to the superior courts. The act provided for review "upon questions of fact, or of the proper application of the provisions of this act," but added that "matters resting in the discretion of the department shall not be subject to review." Calling of a jury was discretionary with the court.

In *Whipple v. Industrial Ins. Comm.*, 116 Wash. 341, 199 Pac. 455, this court held that all questions going to the classification of an injured workman and his right to participate in the insurance fund are questions of fact and subject to review upon appeal by court or jury. But we held that the amount of the award to be made after the workman was properly classified was a matter resting in the discretion of the department and would not be reviewed except to determine if the board had acted arbitrarily or capriciously in fixing the amount of the award.

Chapter 310, Laws of 1927, p. 813, amended the act by creating the joint board of the department of labor and industries. The act provided that appeals from an adverse order of the department should be made to the joint board,

which could affirm or reverse the departmental order. Appeals from orders of the joint board were to be made to the superior courts. The act provided that appeals to the court "shall be *de novo*," but only on the evidence or testimony in the record made before the joint board. Jury trials remained discretionary with the court.

Chapter 184, Laws of 1939, p. 579, continued the *de novo* appeal to the superior court exclusively on the record made before the joint board but granted a jury trial as a matter of right on demand of either party.

The board of industrial insurance appeals was originally created by chapter 219, Laws of 1949, p. 714, as an independent agency wholly divorced from the department of labor and industries and took over all of the functions of the joint board, which was thereby abolished. Hearings before the board of industrial insurance appeals are *de novo* and summary. Appeals from the board's orders to the superior court continued to be *de novo* but exclusively upon the record made before the board. The right to trial by jury upon demand of any party remained unchanged.

Chapter 225, Laws of 1951, p. 681, slightly expanded the functions of the board of industrial insurance appeals but made no basic changes in the procedure of appeals to the board or from the board to the courts.

From our recital of the history of the workmen's compensation act, it can be seen that the functions now performed by the board of industrial insurance appeals formerly were performed by the joint board and before that were performed by the industrial insurance commission. But our decisions in *State ex rel. Davis-Smith Co. v. Clausen, supra,* and *State v. Mountain Tbr. Co., supra,* make it plain that, prior to the creation of the industrial insurance commission in 1911 by the workmen's compensation act, many of the commission's basic functions had been performed for centuries *by the courts.*

Consequently, it must be said that the functions now performed by the board of industrial insurance appeals historically were performed by the courts and thus can truly be classed as judicial.

If we apply the test of comparing the functions of the board with the definition of judicial power given by Justice Holmes in *Prentis v. Atlantic Coast Line Co., supra,* we discover that the board investigates, declares and enforces liabilities as they stand on past facts (the injury of a workman while engaged in extrahazardous employment) under existing laws (the workmen's compensation act). The function of a licensing agency such as was involved in *Household Finance,* on the other hand, looks to the future and changes existing conditions by making a new rule (issuing a license) to be applied to part of those subject to its power (the license applicant), thus making its determinations essentially legislative.

It seems clear to us that the board of industrial insurance appeals performs functions which are essentially or primarily judicial, and the board should be classified as a quasi-judicial body. In *Karlen v. Department of Labor & Industries,* 41 Wn. (2d) 301, 249 P. (2d) 364, by rejecting a contention that the board had acted as "an advocate for a party to the controversy instead of being an independent quasi-judicial body," this court recognized that the board had been created by the legislature to act as a quasi-judicial body, independent from and not under the control of the department of labor and industries.

We have examined workmen's compensation cases from a great many other states and have noted that almost without exception, when called upon to examine the question, their courts have held that the agencies making workmen's compensation awards are either "judicial" or "quasi-judicial" bodies. *Breimhorst v. Beckman,* 227 Minn. 409, 35 N. W. (2d) 719; *Borgnis v. Falk Co.,* 147 Wis. 327, 133 N. W. 209; *Western Metal Supply Co. v. Pillsbury,* 172 Cal. 407, 156 Pac. 491; *French v. Rishell,* 40 Cal. (2d) 477, 254 P. (2d) 26; *Bee Hive Mining Co. v. Industrial Comm.,* 144 Va. 240, 132 S. E. 177; *Long Flame Coal Co. v. State Compensation Com'r,* 111 W. Va. 409, 163 S. E. 16; *State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Comm.,* 320 Mo. 893, 8 S. W. (2d) 897; *Dosen v. East Butte Copper Mining Co.,* 78 Mont. 579, 254 Pac. 880; *Matter*

of *Helfrick v. Dahlstrom Metallic Door Co.,* 256 N. Y. 199, 176 N. E. 141; *In re Hayes,* 200 N. C. 133, 156 S. E. 791, 73 A. L. R. 1179.

Text writers also agree that workmen's compensation boards perform essentially judicial functions. Rhodes, Workmen's Compensation, 184; Dodd, *supra,* 320; Uhler, *supra,* 180; Schneider, *supra,* 41; Freund, Administrative Powers Over Persons and Property, 409, Note 1.

The fact is that the overwhelming weight of authority sustains the view that the administrative agencies administering workmen's compensation acts do perform judicial or quasi-judicial functions, and we are convinced that the board of industrial insurance appeals in this state does perform functions essentially judicial and not essentially or primarily legislative. *Karlen v. Department of Labor & Industries, supra.*

A number of other states have statutes allowing a trial *de novo* in the courts on appeals from decisions of workmen's compensation boards or commissions. None of them are identical to ours. But some provision for either a trial *de novo* or for some re-examination of the facts on appeal to the courts are contained in the laws of Connecticut, Delaware, Florida, Hawaii, Illinois, Kansas, Maryland, Montana, Nebraska, Ohio, Oregon, Texas, and Vermont. The liberal appeal provisions have not been found unconstitutional in any of those states.

In *Willis v. Pilot Butte Mining Co.,* 58 Mont. 26, 190 Pac. 124, the supreme court of Montana was asked to try a workmen's compensation case on appeal anew, disregarding the findings of the industrial accident board and of the trial court. The Montana workmen's compensation act provided that on such appeals the case "shall be tried anew by said supreme court upon the record made in said district court and before said board." The supreme court held that it could not try the case *de novo* because under the Montana constitution that court had only appellate jurisdiction.

The Montana workmen's compensation statutes also provided that, on an appeal to the district court from the judgment of the industrial accident board, the trial should be

*de novo.* In the cited case, the trial in the district court had been *de novo* and the court had affirmed the decision of the board. On appeal, the supreme court, after holding that it did not have jurisdiction to hear the appeal *de novo,* said:

"As district courts are courts of original jurisdiction, *it was within the constitutional power of the legislature to provide that the trial in the district court shall be de novo,* as indicated; but the power given the district court is that of review, rather than a trial anew." (Italics ours.)

The italized portion of the quotation, it will be noticed, completely refutes appellant's position on this appeal. It is the only statement, so far as we have been able to discover, made by any court in this country on the precise point involved in this appeal. Neither appellant, respondent, nor *amici curiae* have cited any cases directly in point. Our own research into the subject of the permissible scope of the court's review of the facts on appeals from workmen's compensation boards has disclosed many cases concerned with the question of how *limited* the court's review can be. No cases, with the exception of *Willis v. Pilot Butte Mining Co.,* have dealt with the question of how *broad* the court's review of compensation awards can be without being unconstitutional.

We are convinced that the italicized portion of the quotation from the *Willis* case correctly states the law.

In the later case of *Dosen v. East Butte Copper Mining Co., supra,* the statement in the *Willis* case, *supra,* that the power given the district court under the workmen's compensation act was "that of review, rather than a trial anew," was modified. In the *Dosen* case, the court said:

"A trial in the district court upon an appeal from an order, decision or award of the Industrial Accident Board 'shall be heard on the record of the board, as certified to the court by it,' unless the court, in the exercise of its judicial discretion, shall permit additional evidence to be introduced. If the court does permit additional evidence to be introduced, the trial proceeds upon a consideration of the evidence heard before the board, and that which the court permits in addition thereto.

"Terminology here is of little moment. *The trial is a re-examination and redetermination in any and every event.* If upon the record of the board, the re-examination is in the nature of review but *the court must render its own judgment.* If the court permits additional evidence to be introduced, the trial proceeds upon a consideration of the evidence heard before the board, and that which the court permits in addition thereto. To that extent the trial is *de novo.*" (Italics ours.)

From the quoted language, it is apparent that the scope of the review in appeals to the court from decisions of the industrial accident board in Montana is similar to the scope of the review on appeals from our board of industrial insurance appeals to the superior court. In Montana, the appeal is directly from the industrial accident board to the courts. Here, an order or decision of the department of labor and industries is appealed first to the board of industrial insurance appeals, an independent agency. Appeals from the board of industrial insurance appeals are then made to the superior court.

The interposition of a hearing before an independent quasi-judicial body in our state does not in any way affect the *judicial power* of the superior court to hear the appeal. We see no distinction between *judicial power* exercised by courts in this state and that exercised by the courts in Montana.

■ We hold that the board of industrial insurance appeals operating pursuant to chapter 225, Laws of 1951, performs an essentially judicial function. Consequently, the trial court did have authority under RCW 51.52.115 to allow a trial *de novo* of the case upon the record made before the board of industrial insurance appeals. The section of the statute under consideration does not unconstitutionally delegate legislative or administrative functions to the superior court. Therefore, the trial court did not err in overruling appellant's demurrers to the evidence and in denying the challenge to the sufficiency of the evidence and the motion to dismiss. Nor did the court err in giving the

challenged instruction or in refusing to give the instruction proposed by appellant.

The judgment must be and hereby is affirmed.

ALL CONCUR.

May 21, 1954. Petition for rehearing denied.

[1]Reported in 269 P. (2d) 577.