[No. 43477.    En Banc.    June 26, 1975.]

RANDY LEE FRANCISCO, *Respondent*, v. BOARD OF DIRECTORS
OF THE BELLEVUE PUBLIC SCHOOLS, DISTRICT NO. 405,
*Petitioner.*

C. R. Lonergan, Jr. (of Siderius, Lonergan & Crowley), for petitioner.

W. Mitchell Cogdill (of Cogdill & Deno), for respondent.

WRIGHT, J.—This matter comes before this court after review was granted on November 19, 1974 (84 Wn.2d 1013). The sole question presented by the petition for review was: What is the scope of trial de novo by a superior court in a case involving discharge of a teacher?

This case arises out of conflicting theories of teaching philosophy. The school district adheres to an educational technique which stresses the teaching of basic skills, such as mathematics, English and science. Respondent-teacher, Randy Lee Francisco, adheres to a teaching principle where the student is left to pursue his or her own interests with the teacher acting in a passive role.

The school involved in this matter is Bellewood Elementary School. Bellewood is described as a transitional school, that is between the traditional school with self-contained classrooms and definite grade levels on the one hand and the open classroom type of school without grade levels on the other hand.

The program at Bellewood was developed and supervised by Dr. Ray Smith, who had been a teacher for 22 years and a principal for 14 years.

Dr. Smith took a sabbatical leave during the 1969-70 school year. Upon his return to his post as principal in August 1970, he discovered problems in the Bellewood school and started taking corrective steps.

Dr. Smith made three visitations to respondent's classroom, and shortly thereafter called the respondent and a "team teacher" for a conference to set down guidelines for development of a teaching program. The teachers were advised to commence this program immediately.

Because of the principal's visitations and his observations of Francisco's classroom during the ensuing week, another conference was called on Monday, September 14, and the principal restated to Francisco his concern over what he had observed.

Thereafter, the principal visited Francisco's classroom every day and went past the room on a number of occasions. On Monday, September 21, another conference was called and he then issued the respondent a written memorandum. The memorandum recited that there had been seven meetings between himself and Francisco, who in the fourth week of school still had not developed an approved instructional program.

At a meeting on September 25, the principal told Francisco there had still been no compliance by Francisco with the memorandum of September 21, and he went over it again with Francisco—underlining the portions that he insisted upon being complied with immediately. During the ensuing week (September 28-October 2) Dr. Smith visited Francisco's classroom every day and concluded no changes had been made. On October 8, Francisco was relieved of his classroom duties.

A notice, as required by RCW 28A.58.450 specifying probable cause for the discharge of respondent, was given on October 23, 1970. The notice read in part: "[T]here is probable cause which is sufficient for your discharge as a teacher with the Bellevue School District."

Respondent requested a hearing before the school board according to RCW 28A.58.450, and such a hearing was held. Thereafter, the respondent was discharged. Three reasons for discharge were given: (1) Insubordination, (2) refusal to teach basic skills, and (3) refusal to cooperate with team-teachers in implementing the school program.

An appeal to the Superior Court followed. Respondent prevailed. The court entered extensive findings of fact which were supported by substantial evidence. Under such a circumstance, an appellate court will not disturb the find-

ings. *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972).

The Superior Court found, among other things, that respondent was making efforts to comply with the traditional teaching form required by the principal, but that respondent neglected to communicate his efforts to the principal, causing a misunderstanding which the principal interpreted as insubordinate conduct. The court concluded that respondent had not engaged in a "deliberate and willful refusal to comply with a reasonable and lawful direction."

The school board, on appeal, challenged the constitutional authority of the Superior Court to make the new and different findings and conclusions of law that served as the basis of reversal of the board's decision. RCW 28A.58.480, in providing the remedy of appeal to discharged teachers, states:

> Any appeal to the superior court by an employee shall be heard de novo by the superior court. Such appeal shall be heard expeditiously.

It is appellant's contention that RCW 28A.58.480, in allowing a court to substitute its own judgment for that of the school board, is an unconstitutional attempt to vest a nonjudicial power in a constitutionally created court. The Court of Appeals affirmed the Superior Court in *Francisco v. Board of Directors*, 11 Wn. App. 763, 525 P.2d 278 (1974).

In reviewing the law on judicial review of administrative action, the constitutional jurisdiction of the superior court on appeal from agency action is as follows: If the power exercised by an agency is essentially administrative, the superior court, upon appeal provided by statute, is limited to a consideration of whether the agency acted arbitrarily, capriciously, or contrary to law. *Household Fin. Corp. v. State*, 40 Wn.2d 451, 244 P.2d 260 (1952); *In re Harmon*, 52 Wn.2d 118, 323 P.2d 653 (1958). If the administrative agency performs an essentially judicial function, the superior court, on appeal from a decision of the board, has, if there is a statute so permitting, the constitutional power

to allow a trial de novo. *Floyd v. Department of Labor & Indus.*, 44 Wn.2d 560, 269 P.2d 563 (1954).

The scope of our examination must, therefore, narrow down to a determination of whether the school board's action in a teacher discharge situation constitutes an administrative function or a judicial function.

■■ In the case of *Floyd v. Department of Labor & Indus.*, *supra*, the Supreme Court outlined three tests to determine whether an administrative agency functions in a judicial capacity or not. First, whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make. Second, whether the function the administrative agency performs is one that courts historically have been accustomed to performing and had performed prior to the creation of the administrative body. The third test, which is adopted from Justice Holmes' statement in *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 53 L. Ed. 150, 29 S. Ct. 67 (1908), discerns a judicial function in this manner:

> A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

A fourth test, in addition to the *Floyd* tests, or, perhaps, a restatement of the second *Floyd* test, for determining whether a particular function is "judicial" in nature is found in *Okanogan County School Dist. 400 v. Andrews*, 58 Wn.2d 371, 363 P.2d 129 (1961) and at page 374 quotes 3 K. Davis, *Administrative Law Treatise* § 24.02, at 395.

> "Perhaps as good a criterion as any for determining what is judicial is merely to compare the action in question with the ordinary business of courts: that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial."

(Footnote omitted.) The first two tests mentioned in *Floyd* are met in the instant case. The superior courts could have

been charged in the first instance with deciding whether a school board's decision to terminate employment was meritorious. Historically, the superior courts did, before enactment of RCW 28A.58.450 and its precedessor statutes, determine whether discharge was wrongful. The teacher, in the early days of the state, when challenging a discharge, filed a complaint in superior court for breach of employment contract, with a prayer for money damages. *Fitzgerald v. School Dist. 20*, 5 Wash. 112, 114, 31 P. 427 (1892); *Splaine v. School Dist. 122*, 20 Wash. 74, 76-77, 54 P. 766 (1898); *Kimball v. School Dist. 122*, 23 Wash. 520, 528-29, 63 P. 213 (1900); *Van Dyke v. School Dist. 77*, 43 Wash. 235, 86 P. 402 (1906); *Andrus v. Church*, 117 Wash. 627, 631-32, 201 P. 917 (1921); *State ex rel. Board of Directors v. Preston*, 120 Wash. 569, 571, 208 P. 47 (1922). In the *Preston* case, at page 571, the court characterized the true nature of a teacher's challenge to his dismissal:

> A teacher is an employee and not a public officer. [Citation omitted.] . . . They are employed in this state by contracts for definite periods, with the teacher as one party and the board of directors of the school district as the other. . . . Of course, if the contract is terminated wrongfully, the district is liable for the damages suffered . . .

*Cf. Kirk v. Miller*, 83 Wn.2d 777, 781, 522 P.2d 843 (1974). Although RCW 28A.58.450 speaks in terms of "probable cause" and "adverse change in contract status," the gist of the inquiry made by the board is whether the teacher has so materially breached his promise to teach as to excuse the school district in its promise to employ. Such determinations are judicial in nature making the decisions of the school board amenable to de novo review by the superior court.

The third test mentioned in *Floyd* also compels the conclusion that the procedures in RCW 28A.58.450 are judicial rather than legislative in origin. *Floyd* indicates that a judicial inquiry " 'investigates, declares and enforces liabilities as they stand on present or past facts and under laws

supposed already to exist,' " while a legislative inquiry " 'looks to the future and changes existing conditions by making a new rule to be applied thereafter.' " In the instant case, the board, in its deliberations, gauged the respondent-teacher's conduct against the district's policy No. 5520, which provides:

> These are considered justifiable causes for release or dismissal of school employees:
>
> . . .
>
> b. Insubordination

Under the *Floyd* test, policy No. 5520 (b) would be viewed as the rule already in existence at the time of the inquiry. The conduct of respondent during the first 4 weeks of the school term (*i.e.*, alleged failure to implement traditional teaching methods) corresponds to the "past or present facts" in *Floyd*; policy No. 5520 corresponds to the "laws supposed already to exist" in *Floyd*; and the application of policy No. 5520 to respondent's conduct, as a means of justifying discharge, corresponds to the "declaration and enforcement of liabilities."

As to the fourth test, *Okanogan* states a judicial function " 'resembles what courts customarily do.' " Black's Law Dictionary (4th ed. 1968) defines "quasi judicial" at page 1411 as

> the action, discretion, etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.

*Cf. Clear Water Truck Co. v. M. Bruenger & Co.*, 214 Kan. 139, 519 P.2d 682 (1974); *Canney v. Board of Pub. Instruction*, 278 So. 2d 260 (Fla. 1973); *Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259 (1972).

The board's action in the instant case most closely parallels a function that is "judicial" in nature. The board members have had to hear and weigh evidence, make findings of fact based on that evidence and draw conclusions from those findings, all as a basis to support their official action

of discharge. That their actions are "judicial" in origin is supported by case law from Washington and other jurisdictions. *Browne v. Gear*, 21 Wash. 147, 57 P. 359 (1899); *State ex rel. Steele v. Board of Educ.*, 252 Ala. 254, 40 So. 2d 689, 694 (1949); *State ex rel. Allen v. Board of Pub. Instruction*, 214 So. 2d 7 (Dist. Ct. Fla. 1968); *Lucia v. Duggan*, 303 F. Supp. 112 (D. Mass. 1969); *Blunt v. State Bd. of Educ.*, 275 So. 2d 303 (Dist. Ct. Fla. 1973). In *Browne v. Gear, supra,* for example, the court stated of teacher certificate revocation proceedings at page 150:

> It is evident that the proceedings under this section of the statute are judicial in their nature, and the superintendent of public instruction is clothed with *quasi* judicial powers by statute, and the power to revoke must be exercised under the same limitations, precautions and sanctions as any other judicial proceedings.

And, in *State ex rel. Steele v. Board of Educ., supra,* it was stated at page 260:

> Of the quasi-judicial type is the power to hear and determine proceedings for the cancellation of contracts of tenure teachers.

If all four tests mentioned justify the classification of the board's hearings and decision to discharge as a quasi judicial proceeding, which in turn can serve as a constitutional basis for de novo review, additionally, it must be said that the plenary nature of those proceedings also urges a standard of review that is de novo in character. In a very real sense, the school board serves in a triple capacity of complainant, prosecutor, and judge. When a teacher receives notice of probable cause, he has only 10 days to prepare for the hearing and his chance to fully develop the record for later review is somewhat limited. The de novo review by the superior court acts as a safeguard against oppressive, hurried and often prejudged determinations made by school boards. Members of the board cannot devote their entire time to perfecting their knowledge of law—which is so necessary for the proper safeguarding of important rights. The integrity of administrative and legislative inde-

pendence is not threatened by de novo review, but, in fact, de novo review in cases such as this assists in sharpening the lines separating each of the coequal branches of government.

The same considerations in *Steele* sanctioning, in the constitutional sense, de novo review of school board actions, applies here. Respondent's employment with the school district is protected by statute. RCW 28A.58.450; RCW 28A.58.515. Our legislature took the added precaution of providing de novo review. There is a presumption in favor of the constitutionality of RCW 28A.58.480 and appellant must clearly demonstrate its unconstitutionality. *Moses Lake School Dist. 161 v. Big Bend Community College*, 81 Wn.2d 551, 503 P.2d 86, *appeal dismissed*, 412 U.S. 934, 37 L. Ed. 2d 393, 93 S. Ct. 2776 (1972); *Commonwealth Title Ins. Co. v. Tacoma*, 81 Wn.2d 391, 502 P.2d 1024 (1972); *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 494 P.2d 1362 (1972); *Belancsik v. Overlake Memorial Hosp.*, 80 Wn.2d 111, 492 P.2d 219 (1971); *Seattle v. Jones*, 79 Wn.2d 626, 488 P.2d 750 (1971); *Water Dist. 105 v. State*, 79 Wn.2d 337, 485 P.2d 66 (1971); *Robison v. Dwyer*, 58 Wn.2d 576, 364 P.2d 521 (1961); *Yelle v. Bishop*, 55 Wn.2d 286, 347 P.2d 1081 (1959); *Letterman v. Tacoma*, 53 Wn.2d 294, 333 P.2d 650 (1959); *Winkenwerder v. Yakima*, 52 Wn.2d 617, 328 P.2d 873 (1958); *Frach v. Schoettler*, 46 Wn.2d 281, 280 P.2d 1038, *cert. denied*, 350 U.S. 838, 100 L. Ed. 747, 76 S. Ct. 75 (1955). Appellant has failed to carry the burden of demonstrating that RCW 28A.58.480 is unconstitutional. The school board hearing and discharge procedure is essentially a "judicial function" over which the superior court has a constitutional right of review. The Superior Court should give deference to the board's findings, which it does by using the transcript of the board's hearing.[1] However,

---

[1] RCW 28A.58.470, in requiring the school board to furnish a complete transcript of the evidence and exhibits relating to the board's hearing, does not change the basic thrust of the meaning of "de novo" in RCW 28A.58.480 or alter the standard of review. The trial court still acts in a de novo capacity, but the nature and extent of the use of the board's transcript is optional. We cautioned in *Goodman v. Bethel*

the Superior Court need not surrender its own expertise in the field of law in favor of the limited legal training of the board under the guise of the "substantial evidence" standard of review.

RCW 28A.58.480, providing for de novo review, is constitutional. Accordingly, the judgment of the Court of Appeals and the Superior Court is affirmed.

STAFFORD, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, and HOROWITZ, JJ., and HENRY, J. Pro Tem., concur.

---

*School Dist. 403*, 84 Wn.2d 120, 127, 524 P.2d 918 (1974) that the affirmative duty upon the school board to furnish a " 'complete transcript of the evidence and the papers and exhibits relating to the decision complained of . . .' RCW 28A.58.470" requires that some practical use be made of those documents—even if that use is no more than shortening the hearing time for the superior court. In the instant case, the "practical use" has been met because the board's record shortened hearing time and clarified and sharpened the issues that had to be considered by the Superior Court.