# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SANDRA K. OLSEN, | No. 69269-1-I |
| Appellant, | |
| v. | DIVISION ONE |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | FILED: April 28, 2014 |

2014 APR 28 PM 12: 11
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

LEACH, J. — Sandra Olsen appeals a superior court judgment denying her workers' compensation benefits for thoracic outlet syndrome. She claims that the court abused its discretion when it permitted testimony from Dr. Gary Franklin about the Department of Labor and Industries' 2010 guidelines, Work-Related Neurogenic Thoracic Outlet Syndrome: Diagnosis and Treatment. Because Olsen opened the door to this testimony, we affirm.

## Background

In 2007, Olsen filed an application with the Department of Labor and Industries (Department) for workers' compensation benefits for right carpal tunnel syndrome, right hand tenosynovitis, and left wrist tendonitis that arose on October 4, 2007, as a result of the conditions of her employment. The Department allowed these claims.

In 2010, Dr. George Thomas and Dr. Kaj Johansen evaluated Olsen for thoracic outlet syndrome. Both Thomas and Johansen diagnosed Olsen with nonspecific neurogenic thoracic outlet syndrome and opined that it was more probable than not an occupationally related condition. Dr. Daniel Neuzil and Dr. Robert Price also examined Olsen. Both Neuzil and Price concluded that Olsen did not suffer from neurogenic thoracic outlet syndrome. The Department issued an order denying Olsen's claim for neurogenic and/or vascular thoracic outlet syndrome, concluding that it was "unrelated to the industrial injury for which this claim was filed." Olsen appealed the Department's order to the Board of Industrial Insurance Appeals (Board).

During her case in chief, Olsen called Thomas and Johansen as expert witnesses. She asked Thomas if he was "familiar with the 2010 Department of Labor and Industries guidelines for the diagnosis and treatment of neurogenic thoracic outlet syndrome that were developed by the Washington State Industrial Insurance Medical Advisory Committee." Olsen also asked Thomas if the guidelines "recognize nonspecific neurogenic thoracic outlet syndrome," if they "make any errors," if Thomas had an "overall opinion regarding the guidelines," if the guidelines represent the standard for diagnosing and treating neurogenic thoracic outlet syndrome nationally or in Washington, and if they provide any guidance for diagnosing and treating neurogenic thoracic outlet syndrome. Olsen asked Johansen about his opinion of the guidelines, if Johansen relied on them in his medical practice to diagnose and treat thoracic outlet syndrome, and

if the guidelines would apply where a patient has been diagnosed with nonspecific thoracic outlet syndrome.

The Department called as expert witnesses Neuzil, Price, and Department Medical Director Dr. Gary Franklin. Franklin testified about the development and use of the guidelines. He also discussed how the 2010 guidelines compared to the previous version of the guidelines. Olsen objected to and moved to strike portions of Franklin's testimony based upon relevance, prejudice, hearsay, and lack of foundation. After the Department completed its direct examination of Franklin, Olsen moved to strike his entire testimony based upon relevance and prejudice. The Board overruled Olsen's objections and denied her motions to strike. The Board affirmed the Department. Olsen next appealed to the superior court.

Before jury selection, Olsen renewed her objection to Franklin's testimony based upon relevance, arguing that the guidelines "were not effective until October 2010 when the issue in this case is whether or not this lady, Sandra Olsen, developed a condition in October 2007. So almost the entirety of his conversation is focusing on these guidelines which came out three years later." The court ruled, "I'm not going to permit him to testify about standards that came into existence at a later time, or about how those standards were developed. I don't see that that's relevant to this particular case."

After opening statements, the trial court reiterated that Franklin could not testify about the 2010 guidelines. The Department asked the court to reconsider

this ruling on the basis that Olsen "opened the door to a discussion of the guidelines" because she specifically asked both Johansen and Thomas about the guidelines. The Department argued, "For the Department not [to] be able to respond to the discussion of the guidelines with subsequent witnesses, I think is incredibly unfair and prejudicial, in fact, to the Department." The trial court explained that at the time of her ruling, she was unaware that Olsen called her witnesses to testify before the Department called Franklin:

> [Y]ou did open the door then. Um, if you had called them in reply, uh, subject to your objection to strike Dr. Franklin's testimony, that might be a different issue.
>
> . . . .
>
> I—I really don't think that I have a choice but to permit the—the State from—from providing a response. Otherwise, what we're doing is we're dissecting what the Board considered and then asking the jury to—to match up their decision with something that's different from what they heard. So, um, I—I am gonna reverse my ruling on that and let it all in.

A jury found that the Board was "correct in deciding that Sandra Olsen does not suffer from neurogenic thoracic outlet syndrome naturally and proximately caused by the distinctive conditions of her employment at San Mar Corporation." The trial court affirmed the Board's decision.

Olsen appeals.

Analysis

A trial court reviews de novo the Board's decision based upon the Board record.[1] The trial court may resolve independently questions about the

---

[1] Sepich v. Dep't of Labor & Indus., 75 Wn.2d 312, 316, 450 P.2d 940 (1969) (citing Mercer v. Dep't of Labor & Indus., 74 Wn.2d 96, 99, 442 P.2d 1000 (1968); Shufeldt v. Dep't of Labor & Indus., 57 Wn.2d 758, 760, 359 P.2d 495

admissibility of evidence.[2]  We will not overturn a trial court's ruling on an evidentiary matter absent a manifest abuse of discretion.[3]  A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds.[4]

Olsen challenges the relevancy of Franklin's testimony.[5]  Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6]

A party may open the door to otherwise inadmissible testimony.[7]  "'It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other

---

(1961); Floyd v. Dep't of Labor & Indus., 44 Wn.2d 560, 578, 269 P.2d 563 (1954)).

[2] Sepich, 75 Wn.2d at 316 (citing Mercer, 74 Wn.2d at 99).

[3] City of Bellevue v. Raum, 171 Wn. App. 124, 149, 286 P.3d 695 (2012) (quoting Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997)), review denied, 176 Wn.2d 1024 (2013).

[4] State v. Emery, 161 Wn. App. 172, 190, 253 P.3d 413 (2011) (quoting State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006)), aff'd, 174 Wn.2d 741, 278 P.3d 653 (2012).

[5] Olsen did not renew her objections in the trial court based upon prejudice, hearsay, or lack of foundation.  Therefore, she may not raise these objections on appeal.  See Sepich, 75 Wn.2d at 319 ("The statement of facts reveals that the objections made at the Board level were not renewed at trial.  It is well settled that objections to evidence cannot be raised for the first time on appeal." (citing Omeitt v. Dep't of Labor & Indus., 21 Wn.2d 684, 152 P.2d 973 (1944))).

[6] ER 401.

[7] Ang v. Martin, 118 Wn. App. 553, 561-62, 76 P.3d 787 (2003) (citing State v. Avendano-Lopez, 79 Wn. App. 706, 714, 904 P.2d 324 (1995)), aff'd, 154 Wn.2d 477, 114 P.3d 637 (2005).

party from all further inquiries about it.'"[8] "The trial court has considerable discretion in administering this open-door rule."[9]

Even if Franklin's testimony about the guidelines was not relevant, Olsen opened the door to this testimony. Before Franklin testified, Olsen questioned both of her expert witnesses during her case in chief about the guidelines. During his testimony, Franklin rebutted specific assertions from these witnesses.

When Olsen sought to exclude Franklin's testimony, she did not inform the trial court that her expert witnesses testified about the guidelines before the Department called Franklin to testify. After learning this information, the court appropriately determined that Olsen opened the door to Franklin's challenged testimony and acted well within its discretion by reversing its earlier ruling. Excluding Franklin's testimony after receiving part of the evidence about the guidelines from prior witnesses "'not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths.'"[10] Therefore, the trial court did not abuse its discretion when it permitted Franklin's entire testimony.

Conclusion

Because Olsen opened the door to rebuttal testimony about the Department's 2010 guidelines, Work-Related Neurogenic Thoracic Outlet

---

[8] Ang, 118 Wn. App. at 562 (quoting State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969)).

[9] Ang, 118 Wn. App. at 562 (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14 (4th ed. 1999)).

[10] Ang, 118 Wn. App. at 562 (quoting Gefeller, 76 Wn.2d at 455).

Syndrome: Diagnosis and Treatment, the trial court did not abuse its discretion when it permitted Franklin's testimony. We affirm.

Leach, J.

WE CONCUR:

Dwyer, J.

Appelwick, J