[No. 33373-9-I.   Division One.   March 6, 1995.]

DAVID M. BATCHELDER, *Respondent*, v. THE CITY OF SEATTLE, ET AL, *Defendants*, HUGH AINSLIE, *Appellant*.

*John Richard Aramburu,* for appellant.

*Peter J. Eglick, Bob C. Sterbank,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondent.

*Brian K. Leonard* on behalf of the Washington Environmental Council, amicus curiae.

WEBSTER, J. — Hugh Ainslie appeals a judgment reversing an order of the Shorelines Hearings Board (SHB) affirming Seattle's approval of his Shoreline Substantial Development Permit (SSDP), and vacating his permit. He argues that: (1) the City did not improperly segment the review of the development project, and (2) the court erred in concluding that the SHB erred in determining that the Seattle Shoreline Master Program (SSMP) allowed minor view blockage.

## FACTS

This case involves a land development proposal for construction on the west shore of Portage Bay in Seattle. Hugh Ainslie is the owner of an 11,951-square-foot rectangular

waterfront parcel on the northeast corner of Everett Avenue East and Boyer Avenue East. Ainslie sought to subdivide his existing parcel into four lots, rehabilitate the existing house on the shoreline lot, and construct three single-family houses on three newly created lots. To the north of Ainslie's property is a single family home owned by David Batchelder. To the south is the right of way for Everett Avenue East. Batchelder is involved because part of the view he now enjoys over the Ainslie property will be lost if the property is developed.

Because the property is located within 200 feet of the high water mark of Portage Bay and the cost of the project exceeds $2,500, a Shoreline Substantial Development Permit (SSDP) was required by the Shoreline Management Act of 1971 (SMA). RCW 90.58.030. Ainslie applied to the City of Seattle for approval to subdivide the parcel into four lots for individual sale, a "design departure" under the Seattle Land Use Code to provide less than the required setbacks for the construction, and an SSDP.

In January 1992, Seattle approved Ainslie's application for a short plat and design departure, prior to its issuance of his SSDP. Batchelder did not appeal the approval of the short plat and design departure. He did, however, file an appeal of the SSDP decision. Batchelder's primary complaint at the SHB hearing was view blockage. The view at issue was to the southeast; Batchelder would retain his easterly view across Portage Bay toward the University of Washington and the Seattle Yacht Club and the southeasterly waterfront view over the existing house on the Ainslie property.

The SHB found that the City's approval of the SSDP did not violate the shoreline setback requirements of the SSMP because the proposed structures would not be constructed shoreward of existing structures. The SHB dismissed Batchelder's appeal.

Batchelder appealed. The court reversed the decision of the SHB and vacated the SSDP, because it believed that the City improperly short platted Ainslie's property prior to consideration of his application for a SSDP, to avoid application of its shoreline setback requirement set out in Seattle Muni-

cipal Code (SMC) 23.60.198(B)(1) and Director's Rule 4-89. The court held that the SHB's affirmation of this process was contrary to the SMA's prohibition against segmented, piecemeal development. This appeal followed.

## DISCUSSION

### Scope of Review

■■ Judicial review of a decision of the SHB is governed by the Administrative Procedure Act, RCW 34.05. RCW 90.58.180(3). Review is of the record of the agency, in this case the SHB, not the trial court record. RCW 34.05.558; *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). RCW 34.05.570(3) sets forth the criteria for review. On factual matters, the administrative agency can be overturned if the decision is "arbitrary or capricious", or when:

> The order is not supported by evidence that is substantial when viewed in light of the whole record before the court . . ..

RCW 34.05.570(3)(e), (i). Evidence is substantial if it would convince an unprejudiced, thinking mind of the truth of the declared premise. *See Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 486, 805 P.2d 800 (1991). Legal determinations of administrative agencies are reviewed under an error of law standard. *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991); *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988). On matters of law the agency can only be overturned if the agency "has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure; . . . [or] [t]he agency has erroneously interpreted or applied the law". RCW 34.05.570(3)(c), (d).

### I

■ Batchelder claims that Seattle conducted a piecemeal review of Ainslie's development, improperly segmenting the project, and the SHB erred in permitting the "segmentation". Every project for which a shoreline substantial development permit for secondary uses is sought must be consistent with

both the applicable shoreline master program, in this case the Seattle Shoreline Master Program, and the SMA. RCW 90.58.140. The interpretation of a statute is a question of law. *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 5, 802 P.2d 784 (1991). While the burden of proof respecting the issuance of permits before local government is with the applicant, on appeal to the SHB "the person requesting the review has the burden of proof." RCW 90.58.140(7).

The SMA provides that:

> The legislature finds that the shorelines of the state are among the most valuable and fragile of its natural resources and that there is great concern throughout the state relating to their utilization, protection, restoration, and preservation. . . . There is, therefor[e], a clear and urgent demand for a planned, rational, and concerted effort . . . to prevent the inherent harm in an uncoordinated and piecemeal development of the state's shorelines.

RCW 90.58.020. To insure coordinated development of our shorelines the SMA establishes a permit system, with the primary responsibility for its administration upon local government, for the control of such development consistent with the SMA and the jurisdiction's "shoreline master program". RCW 90.58.050; 90.58.140(2); SMC 23.60. The master program, as required by RCW 90.58.100, is essentially a "zoning code" for the shorelines, which specifies kinds and types of development allowed.

Here, the City approved the "short plat", permitting division of the single lot into four separate parcels for sale and a "design departure" diminishing the setback requirements for the project on January 9, 1992, and the SSDP on January 30, 1992.

■ Batchelder and the Washington Environmental Council, in its amicus curiae brief, cite *Merkel v. Port of Brownsville*, 8 Wn. App. 844, 509 P.2d 390 (1973), for their proposition that the separate approvals mean that review of the development project was segmented. However, careful reading of *Port of Brownsville* reveals that the Port had obtained permits and began clearing and grading land in preparation for a development project which had not yet been reviewed

for a substantial development permit. There the court did not reverse the permits which had been issued; rather, it required that the injunction preventing further clearing of the land be maintained until review of the entire development project had been completed and the substantial development permit issued. *Brownsville*, at 851-52. Thus, *Brownsville* stands for the proposition that a single project may not be divided into segments for purposes of avoiding compliance with the SMA. *Brownsville*, at 851.

"Piecemealing" a single project affecting uplands and shorelands, to allow one portion of the project to proceed while the other portion of the project awaits approval, is not present here. *See Swift v. Island Cy.*, 87 Wn.2d 348, 362, 552 P.2d 175 (1976). There was no improper segmentation of the review process for the development and *Merkel v. Port of Brownsville, supra*, does not apply. The entire project was reviewed by the City and after the review was complete the required permits were issued based on that review. The "Analysis and Decision" of the City's Director of Department of Construction and Land Use was issued on January 9, 1992. SHB Ex. A-7.[1] The City's decision is 15 pages long and comprehensively reviews the proposed short plat, design departure, and shoreline development permit. Indeed, at the first page, the City identifies that all three decisions are being reviewed. The decision then discusses background data, pp. 2-3, analyzes the short plat subdivision, pp. 4-6, the shoreline substantial development permit and the requirements of the SSMP, pp. 7-11, and the design departure, pp. 12-13. The decision also explicitly lists conditions for approval of the short plat, design departure and the substantial development permit, pp. 13-15. The fact that the City issued separate approvals does not change the fact that the entire proposed development was reviewed under the SSMP and SMA; there was no segmentation of the review process.

---

[1]Contrary to Batchelder's assertion at page 27 of his brief the record before the SHB did include the analysis and decision of the Seattle Department of Construction and Land Use.

## II

██ ██ Batchelder disputes Ainslie's claim that the SHB correctly interpreted the terms of the Seattle Shoreline Master Program regarding shoreline setbacks. Interpretation of a Shoreline Master Program provision is a question of law. *Nisqually Delta Ass'n v. DuPont*, 103 Wn.2d 720, 730, 696 P.2d 1222 (1985). Although substantial weight is accorded to the agency's legal interpretation if it falls within the agency's expertise in a special area of law, the reviewing court may, where necessary to ensure that a proposed project complies with the SMA, substitute its judgment for that of the agency. *Macey*, 110 Wn.2d at 313; *Haley*, 117 Wn.2d at 728.

██ ██ In interpreting a statute, it is the court's duty to ascertain and give effect to the intent and purpose of the Legislature. *Morse v. Toppenish*, 46 Wn. App. 60, 63, 729 P.2d 638 (1986), *review denied*, 108 Wn.2d 1007 (1987). "Zoning ordinances should be given a reasonable construction and application in order to serve their purpose and scope . . . and any unreasonable construction must be rejected." *Wiggers v. Skagit Cy.*, 23 Wn. App. 207, 212, 596 P.2d 1345 (1979).

The applicable shoreline setback policy is that

> [r]esidences on waterfront lots shall not be located further waterward than adjacent residences. If there are no other residences within one hundred feet (100′), residences shall be located at least twenty-five feet (25′) back from the line of ordinary high water.

SMC 23.60.198(B)(1). Thus, for shoreline setback purposes, Seattle's City Council intended to regulate waterfront residences, not residences built upland and directly behind existing waterfront residences.

Here, Ainslie's proposed construction of new homes is not on waterfront lots; they are upland directly behind the existing residence on the property and about 62 feet from the edge of the shore. Thus, Seattle's shoreline setback policy did not apply to the proposed construction on those upland lots. Moreover, Batchelder did not appeal the City's

short plat decision. The property had been short platted and the existing house was on a separate lot; the SHB properly determined "that the 'adjacent residence' to the Batchelder property is the vacant house on the water on parcel D. Since the new residence is behind the existing residence, the SHB concludes that the new residence is not subject to shoreline setback requirements." The Ainslie project did not violate Seattle's Shoreline Master Program.

Batchelder asserts that the SHB's ruling is precluded by "Director's Rule 4-89". He relies on the "Rule" to support his argument that the City and the SHB misinterpreted provisions of the Shoreline Master Program. Rule 4-89 states that existing or approved residences located on the same lot as the subject residence or site shall not be classified as adjacent residences.

"The Director may promulgate rules consistent with this title". SMC 23.88.010.[2] However, Director's Rule 4-89 has never been adopted by the Seattle City Council and as such cannot be used to demonstrate any legislative intent. *See* SMC 23.60. Thus, we find that under the unique facts of this case the application of the "director's rule" would be inconsistent with the clear language of SMC 23.60.198(B)(1). Its application would result in denial of a building permit on lot "C" which is clearly inconsistent with the intent not to regulate for shoreline setback purposes residences which are landward of existing shoreline residences. Further, since the original lot was short platted into four separate lots prior to approval of the SSDP, the existing house was now on a separate lot, and thus, the setback line for the project was properly drawn even under the rule.

Moreover, Batchelder seems to be contending by analogy to *Brownsville* that Seattle cannot sequence the approval of the short plat and SSDP to avoid its internal Director's Rule 4-89, which he contends would preclude the development. Although we might take a dim view of Seattle's sequencing of the approvals in the manner it did, we find no precedent

---

[2]Although no rule-making authority appears directly in the SSMP portion of the SMC, the rule-making authority in SMC 23.88.010 applies to the entire title.

which precludes the City of Seattle from approving the short plat first. Under these facts Seattle's approval of the short plat did "not have the effect of authorizing construction upon the property . . . [or] involve any physical alteration of the land or irrevocable commitment to allow such a physical alteration." *Narrowsview Preserv. Ass'n v. Tacoma*, 84 Wn.2d 416, 424, 526 P.2d 897 (1974); *Clam Shacks of Am., Inc. v. Skagit Cy.*, 109 Wn.2d 91, 97, 743 P.2d 265 (1987) (an act of rezoning in and of itself is not a substantial development). Thus, a shoreline development permit was not required in conjunction with the short plat approval and Seattle could act on the short plat application independently.

## III

Ainslie claims that both the City and the SHB correctly found that the SMA allowed the development of the proposed new homes on the Ainslie property. However, even if Ainslie's proposal does not violate the terms of the SSMP, the SMA also allows the SHB and this court to consider whether the project violates essential policies of the SMA. *See* RCW 90.58.140(2) (a permit shall be granted, after adoption of an applicable master program, only when the development proposed is consistent with the applicable master program and the provisions of RCW 90.58).

Implementation guideline A2 for the SSMP provides that all environments in Portage Bay shall provide for some open water and protect views of the bay. Resolution 25173, A2 at 6. The SSMP provides that its purpose among others is to:

Preserve, enhance and increase views of the water . . ..

SMC 23.60.002. In implementing that purpose, the SSMP provides:

**View corridors in the UR [urban residential] Environment.**

A. A view corridor or corridors of not less than thirty-five percent (35%) of the width of the lot shall be provided and maintained on all waterfront lots and on any upland through lot separated from a waterfront lot . . ..

B. *View corridors are not required for single-family dwelling units.*

(Italics ours.) SMC 23.60.576(A), (B). A commonsense read-

ing of these provisions is that Seattle intended to protect views of Portage Bay, but that protection does not go so far as prohibiting all development which might impact current views from residential property. Further, that protection is limited to the 35 percent shoreline view corridor for shoreline lots.

Here, both the City and the SHB found that the impact on the Batchelder view was relatively minor when all circumstances were considered. We agree with the SHB's decision that view losses because of the Ainslie project are minimal and not contrary to the policies of the SSMP or SMA. The Batchelder property currently has fine water views available to it. Taking account of existing obstructions, the Batchelder property currently has a 98 degree view available, part of which is over the house on the front of the Ainslie property. The view at issue here is of the wetland area southeast of Portage Bay, where the two-story house is to be located. Batchelder will retain 80 percent of his view looking directly out over Portage Bay toward the University of Washington to the north and the Seattle Yacht Club to the east. If the homes are constructed on the upland portion of the Ainslie property, that view will be only marginally reduced to approximately 80 degrees. Accordingly, we agree with the Board that the blockage of the Batchelder view is relatively minimal and, under SSMP, that is not enough to call for denial or modification of the project. The SHB's decision concerning the view impacts of the development falls within the requirements of SMC 23.60.576 and is affirmed.

We reverse the order of the Superior Court and remand with instruction to reinstate Ainslie's Shoreline Substantial Development Permit.

SCHOLFIELD, J. Pro Tem., concurs.

BAKER, A.C.J. (dissenting) — I respectfully dissent. The subject property was a single parcel zoned to permit low rise apartments. It contained a single-story, dilapidated house

near the lakeshore. It is owned by a developer, Ainslie, who approached the City of Seattle (City) seeking permission to build three additional houses on the parcel, then to short plat the parcel and sell the separate lots and houses.

The City correctly pointed out that under its Shoreline Master Program it could not allow the project to proceed in that manner. This was because the City's Shoreline Master Program prohibits locating residences on waterfront lots further waterward than adjacent residences. Seattle Municipal Code 23.60.198(B)(1). Because the land parcel is a waterfront lot, and the proposal to build the additional houses involved locating one of the new structures further waterward than a neighboring adjacent house (Batchelder's), Ainslie could not proceed in the manner contemplated without applying for a variance, which, under the stringent requirements applicable to such variances, would likely not be granted.

There was, however, a method of accomplishing the same desired result, suggested the City, if only Ainslie would *first* short plat the parcel. Then the *separate* lots could be considered separately, the old, dilapidated structure which is nonconforming because it is situated too close to the water's edge could be treated as an *adjacent* residence, and the additional houses could be built as proposed. Ainslie agreed, and the City proceeded accordingly.

It is difficult to imagine a clearer example of a local jurisdiction sequencing its review of a project so as to lead to a particular result. By segmenting its *approval*, not its consideration of the project as the majority opinion erroneously focuses upon, the City ensured the issuance of a shoreline substantial development permit. The permit could *only* issue if the City segmented the review process so as to render its short plat decision independently of, and prior to, the decision on the shoreline permit.

The majority readily accepts this procedure. I do not, because it violates the basic holding of *Merkel v. Port of Brownsville*, 8 Wn. App. 844, 509 P.2d 390 (1973): a single project must not be artificially compartmentalized by a local jurisdiction in

its review procedures so as to avoid applicability of the Shoreline Management Act of 1971.

I disagree with the majority opinion on another point. One of the principal goals of the City's Shoreline Master Program is to preserve and enhance views of the shoreline and water from upland areas. Resolution 25173(B)(2). The basic purpose of the setback requirement is to protect against encroachment on lateral views, principally of the shoreline.

The primary view from the Batchelder property is a shoreline view overlooking an undeveloped, publicly owned marsh. By denigrating the significance of the view blockage which will result from this project because that view is only of a wetland, the majority of the Shorelines Hearings Board relegated such wetlands and the views thereof to minor or incidental importance.

In my opinion, the City's Shoreline Master Program should be interpreted in a manner consistent with the policies of the Shoreline Management Act of 1971. The goals and policies adopted pursuant to that act clearly provide for preservation and enhancement of views of the shoreline as well as open water.

The decision of the Shorelines Hearings Board should be reversed.

Reconsideration denied April 18, 1995.

Review denied at 127 Wn.2d 1022 (1995).