[No. 21625-6-II. Division Two. November 13, 1998.]

GEORGE LUND, *Appellant*, v. THE DEPARTMENT OF ECOLOGY,
ET AL., *Respondents*.

330

*Robert E. Mack* of *Smith Alling Lane*, for appellant.

*James V. Handmacher* of *Bonneville, Viert, Morton & McGoldrick*; and *Christine O. Gregoire, Attorney General,* and *Mary Sue Wilson* and *Jean M. Wilkinson, Assistants,* for respondents.

*Robin Jenkinson, City Attorney,* and *Kyle J. Crews, Assistant,* for the City of Tacoma.

HOUGHTON, C.J. — George Lund appeals from a superior court order denying him a conditional use permit to build a single-family residence over water. We hold that the permit was properly denied and, therefore, affirm.

FACTS

The facts are undisputed. In June 1978, Lund purchased a parcel of land on the water side of Wilton Road, along the Tacoma Narrows. Later, he subdivided the parcel into four lots. Lund sold the three upland lots, but retained the fourth lot on the tideland. Before Lund purchased the larger parcel, a cabin, built to float on logs, sat on the fourth lot. This cabin was razed in 1964.

The water side of Wilton Road is composed of residential structures built on pilings over the tideland. There is a private road used exclusively for access to the homes. In 1979, following adoption of the Tacoma Shoreline Master Program (TSMP), these residences became nonconforming uses. Lund's tideland lot is the only undeveloped lot on Wilton Road. *Id.*

In 1992, Lund applied for shoreline substantial development and conditional use permits to build a one-story, pile-supported, single-family residence over the water. His property lies within Tacoma's (City) S-1 Shoreline District. The purpose of the S-1 District is to "retain the existing residential and commercial character of the area . . . ." TSMP § 13.10.040(A). Based upon the recommendations of The Office of Hearing Examiner (Examiner), the City approved the conditional use permit. The Examiner based his decision upon the existence of an established residential neighborhood on Wilton Road and retention of the neighborhood's character.

Under RCW 90.58.140(12), the Department of Ecology (Ecology) must approve any conditional use permit granted by a local government. Ecology denied Lund's shoreline conditional use permit because it did not comport with the TSMP. Lund appealed to the Shoreline Hearings Board

(Board) and Ecology moved for summary judgment. The Board granted Ecology's motion for summary judgment and denied Lund's motion for reconsideration. Lund then appealed to the superior court, which ruled in favor of Ecology and denied Lund's motion for reconsideration.

Lund appeals, essentially contending that: the Board erroneously interpreted/applied the law when it concluded that the TSMP precluded a conditional use permit to build a new over water residence and when it concluded that the new over water residence did not qualify as a preexisting use under the TSMP; the superior court erred in denying Lund the opportunity to supplement the administrative record to include constitutional arguments; and the superior court erred when it declined to review Lund's constitutional claims.

ANALYSIS

Standard of Review

 The Administrative Procedure Act (APA), RCW 34.05.570(3) governs our review of the Board's decision. *Batchelder v. City of Seattle*, 77 Wn. App. 154, 158, 890 P.2d 25, *review denied*, 127 Wn.2d 1022 (1995). Interpretation of the Shoreline Management Act and the TSMP involves questions of law and, therefore, we review the Board's decision under the error-of-law standard. *Jefferson County v. Seattle Yacht Club*, 73 Wn. App. 576, 589, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994).

 Substantial weight is given to the legal interpretation of an agency acting within its realm of expertise. *Seattle Yacht Club*, 73 Wn. App. at 588. Thus, we reverse the Board's decision only if the Board "has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure; . . . [or] [t]he agency has erroneously interpreted or applied the law." *Batchelder*, 77 Wn. App. at 158; RCW 34.05.570(3)(c), (d). To engage in this analysis, we review the Board's record and decision, not that of the superior court. *Seattle Yacht Club*, 73 Wn. App. at 588.

■ Lund's arguments that the superior court erred in denying him the opportunity to present evidence and arguments on constitutional issues not raised before the Board is reviewed under an abuse of discretion standard. Under RCW 34.05.562(1),

> [t]he court may receive evidence in addition to that contained in the agency record for judicial review, only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding:
>
> (a) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action;
>
> (b) Unlawfulness of procedure or of decision-making process; or
>
> (c) Material facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record.

RCW 34.05.562(1).

The admission or refusal of evidence is largely within the discretion of the trial court and will not be reversed on appeal absent a showing of a manifest abuse of discretion. *Riss v. Angel*, 80 Wn. App. 553, 562, 912 P.2d 1028 (1996), *aff'd*, 131 Wn.2d 612 (1997). "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

■ The superior court's decision on the merits of Lund's constitutional claims is reviewed de novo. *Washington Ass'n of Child Care Agencies v. Thompson*, 34 Wn. App. 225, 230, 660 P.2d 1124, *review denied*, 99 Wn.2d 1020 (1983); *Francisco v. Board of Directors*, 85 Wn.2d 575, 582-83, 537 P.2d 789 (1975).

## Conditional Use Permit

Lund first contends that the Board erred when it con-

cluded that TSMP §§ 13.10.040(D)(9), 13.10.175(B)(14)(1), and WAC 173-14-140(3) prohibited him from obtaining a conditional use permit authorizing construction of a new over water residence.

To address Lund's argument, we must review and analyze various provisions. Initially, we note that in enacting the 1971 Shoreline Management Act (SMA), the Legislature found that preservation of the state's valuable and fragile shorelines against increasing pressure of unrestricted construction, necessitated the implementation of a management and development plan that enhanced the public interest and protected the land, but also recognized and protected private property rights. RCW 90.58.020. Local governments are responsible for initiating and administering the SMA mandates. RCW 90.58.050; *Batchelder*, 77 Wn. App. at 159; *see also Clam Shacks of Am., Inc. v. Skagit County*, 109 Wn.2d 91, 94, 743 P.2d 265 (1987). A comprehensive plan for the types of approved development constitutes a locality's shoreline master program. RCW 90.58.020. *Clam Shacks*, 109 Wn.2d at 94.

The Legislature further provided that:

> Each master program shall contain provisions to allow for the varying of the application of use regulations of the program, including provisions for permits for conditional uses and variances, to insure that strict implementation of a program will not create unnecessary hardships or thwart the policy enumerated in RCW 90.58.020. Any such varying shall be allowed only if extraordinary circumstances are shown and the public interest suffers no substantial detrimental effect.

RCW 90.58.100(5). Under RCW 90.58.020, a permit application for a single-family residence has priority over other uses.

Finally, Ecology adopts the local governments' shoreline master programs necessary and appropriate to carry out the provisions of the SMA. RCW 90.58.200; RCW 90.58.090.

Ecology reviews the issuance of conditional use[1] permits to ensure compliance with the regulations. RCW 90.58.140(12); *Buechel v. Department of Ecology*, 125 Wn.2d 196, 204, 884 P.2d 910 (1994).

TSMP § 13.10.175 applies to all proposed local developments. Subsection (B)(14)(1) provides: "[t]he following regulations apply to Shoreline Districts in which residential uses are allowed: (1) *Residential development over water . . . shall not be permitted* unless otherwise specified in this chapter." (Emphasis added.) TSMP § 13.10.040(D) limits conditional use permits for residences *to "upland location[s] only."* (Emphasis added.) Former WAC 173-14--140 (1995) provides:

**Review criteria for conditional use permits.** The purpose of a conditional use permit is to allow greater flexibility in varying the application of the use regulations of the master program in a manner consistent with the policies of RCW 90.58.020: *Provided,* That conditional use permits should also be granted in a circumstance where denial of the permit would result in a thwarting of the policy enumerated in RCW 90.58.020 . . . .

. . . .

(3) *Uses which are specifically prohibited by the master program may not be authorized.*

(Emphasis added.)

■ ■ Lund asserts that denying his permit because TSMP § 13.10.175 (B)(14)(1) prohibits residential development over water "thwart[s] . . . the policy enumerated in RCW 90.58.020" by not protecting his private property rights. Contrary to Lund's contention, this policy is second-

---

[1]WAC 173-14-030(4) defines "[c]onditional use" as: "a use, development, or substantial development which is classified as a conditional use or is not classified within the applicable master program." TSMP § 13.10.030(C)(1) defines it as:

a use or development which is classified as a conditional use or is not classified within the applicable shoreline district and development exceeds $2,500 in total cost or fair market value or materially interferes with the normal public use of the water or shorelines of the City.

ary to the SMA's primary purpose, which is "to protect the state shorelines as fully as possible." *Buechel*, 125 Wn.2d at 203. The Legislature contemplates the protection of private property rights *"only if* extraordinary circumstances are shown and the public interest suffers no substantial detrimental effect." RCW 90.58.100(5) (emphasis added.) Thus, a conditional use permit may be granted only when it meets the guidelines set forth in the locality's shoreline master program. *Buechel*, 125 Wn.2d at 205.

 As the Board correctly observed, TSMP §§ 13.10.175(B)(14)(1) and 13.10.040(D) do not permit construction of residences over water. The TSMP does not contain any sections that override the prohibition against such construction. Therefore, WAC 173-14-140 authorizes the TSMP to specifically prohibit building a residence over the water. Here, the general policy does not override the specific statutes that prohibit issuing a permit. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978) (declarations of policy are without force in and of themselves). Lund's argument fails because TSMP § 13.10.040(A) does not authorize construction of residences over the water. To the contrary, the explicit language of TSMP §§ 13.10.175(B)(14)(1) and 13.10.040(D) prohibits such construction.

## Pre-existing Use

Next, Lund contends that the Board erred when it concluded that his proposed residence did not qualify as a pre-existing use under TSMP § 13.10.190, which provides:

**Pre-existing uses.**

Existing use activities not specifically identified as permitted or conditional uses shall be considered as pre-existing uses. Such pre-existing uses of land or structures shall have been in *lawful existence* at the time of the passage of this chapter. Pre-existing uses shall be subject to the same development and

improvement regulations controlling the permitted uses of the Shoreline District in which they are located . . . .

. . . .

D. When the operation of a pre-existing use is discontinued for a period in excess of two years, it shall be considered as an intent to abandon said use, and the future use of such property shall be in accordance with the permitted and conditional use regulations of the Shoreline District in which it is located.

(Emphasis added.)

■■ A pre-existing use may be discontinued for a period of more than two years, provided a letter of intent to continue the use is filed with the Examiner and determined to be a valid request. The period of discontinuance shall be determined by the Examiner, but shall not exceed two additional years.

■■ Lund asserts that he never intended to abandon residential use of his property. He testified that the cabin located on this property was razed in 1964 and that he purchased the property in 1979. But when the TSMP was passed, there was no structure on the site. *Anderson v. Island County*, 81 Wn.2d 312, 321, 501 P.2d 594 (1972) (to qualify as nonconforming use, property use must actually be established prior to the adoption of the zoning ordinance). Therefore, the Board did not err in concluding that Lund's proposal did not qualify as a pre-existing use.

## Constitutional Arguments

Finally, Lund contends that the trial court erred in not allowing him to supplement the administrative record to help develop his constitutional arguments. He asserts that the court erred in determining that it lacked authority to take additional evidence.

■■ ■■ Lund failed to properly present a constitutional claim to the trial court. He neither refers to specific constitutional provisions nor engages in more than a pass-

ing analysis. The heavy burden of establishing that a regulation results in a constitutional violation is on the party challenging the regulation. *Orion Corp. v. State*, 109 Wn.2d 621, 658, 747 P.2d 1062 (1987), *cert. denied*, 486 U.S. 1022 (1988). A party cannot rely on conclusory statements regarding alleged constitutional infirmities. *Havens v. C&D Plastics, Inc.* 124 Wn.2d 158, 169, 876 P.2d 435 (1994) (appellate court will not address constitutional arguments that are not supported by adequate briefing); *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 649-50, 854 P.2d 23 (1993) (substantive due process claim rejected, in part, on inadequate briefing); *State v. Carver*, 113 Wn.2d 591, 598-99, 781 P.2d 1308 (1989) (in absence of developed briefing and argument, court will not consider independent state constitutional theories). In his reply brief, Lund suggested that if the evidence were insufficient to rule on the matter, a separate evidentiary hearing should be held. The trial court acknowledged it had the authority to supplement the record, but declined to do so because of the untimely request. The trial court did not abuse its discretion in declining to supplement the record.

Lund also contends that the trial court erred in ruling on the constitutionality of WAC 173-14-140(3) and argues that we should hold this provision unconstitutional on its face. Lund reasons that he is deprived of his property rights by being precluded from both residential use and the commercial use of his property.

██ ██ Under a facial challenge to a land use regulation, the landowner must show that the mere enactment of the regulation constitutes a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 493, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987). The test for a facial challenge is a high one, in part because the landowner has not presented any evidence about the particular impact of the regulation on his or her parcel of land. To succeed in proving that a statute on its face effects a taking by regulating the permissible uses of property, the landowner must show that the mere enactment of the statute denies the owner of

all economically viable use of the property. *Orion*, 109 Wn.2d at 658. In facial challenges, landowners need not exhaust administrative remedies. *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 333, 787 P.2d 907, *cert. denied*, 498 U.S. 911 (1990). Such exhaustion would be futile if indeed the regulation prevented any economically viable use of the land. *Orion*, 109 Wn.2d at 625 (citing *Orion Corp. v. State*, 103 Wn.2d 441, 457-60, 693 P.2d 1369 (1985)). Thus, a facial challenge in which the court determines a regulation denies all economically viable use of property "should prove to be a relatively rare occurrence." *Presbytery*, 114 Wn.2d at 335; *Guimont v. Clarke*, 121 Wn.2d 586, 605, 854 P.2d 1 (1993), *cert. denied*, 510 U.S. 1176 (1994).

This court will not address constitutional arguments that are based upon conclusory statements. *Havens*, 124 Wn.2d at 169; *Margola*, 121 Wn.2d at 649-50 (substantive due process claim rejected, in part, on inadequate briefing). Lund has failed to meet the heavy burden of establishing a violation of his constitutional property rights under WAC 173-14-140(3). *Orion Corp.*, 109 Wn.2d at 658.

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.