## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PRESERVE RESPONSIBLE SHORELINE MANAGEMENT, Alice Tawresey, Robert Day, Bainbridge Shoreline Homeowners, Dick Haugan, Linda Young, Don Flora, John Rosling, Bainbridge Defense Fund, Gary Tripp, And Point Monroe Lagoon Home Owners Association, Inc., )<br><br>Appellants,<br><br>v.<br><br>CITY OF BAINBRIDGE ISLAND, Washington State Department of Ecology, Environmental Land Use Hearing Office and Growth Management Hearings Board Central Puget Sound Region,<br><br>Respondents. | No. 80092-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: December 9, 2019 |

MANN, A.C.J. — Preserve Responsible Shoreline Management (PRSM) seeks review of the superior court's decision denying its motion to supplement the administrative record in its appeal of the City of Bainbridge Island Shoreline Master Program. PRSM unsuccessfully appealed the Shoreline Master Program to the Growth Management Hearings Board (Board). PRSM then appealed the Board's final decision

to the superior court under the Administrative Procedure Act (APA), Ch. 34.05 RCW, adding facial constitutional challenges. PRSM then unsuccessfully moved to amend the administrative record with new testimony purportedly supporting its constitutional claims. We granted discretionary review and now affirm.

I.

In July 2014, the City of Bainbridge (City) adopted a new Shoreline Master Program (SMP) with approval of the State of Washington Department of Ecology (DOE). On October 7, 2014, PRSM filed a petition for review with the Board asserting that the SMP violated provisions of the Shoreline Management Act (SMA), ch. 90.58 RCW, and the Shoreline Master Program Guidelines, WAC 173-26-171. The petition asserted that the SMP also raised constitutional issues but because the Board did not have jurisdiction "those issues are not being raised in this petition." Consistent with this statement, the petition for review did not include PRSM's constitutional theories. On April 6, 2015, the Board issued its Final Decision and Order concluding that the petitioners failed to demonstrate that the actions of the City and the DOE violated the SMP or guidelines, and dismissing the appeal.

On May 6, 2015, PRSM filed a petition for judicial review of the Board's final decision in the Kitsap County Superior Court. The petition raised a number of constitutional issues under the APA and Uniform Declaratory Judgment Act (UDJA), ch. 7.24 RCW. The superior court dismissed the UDJA causes of action, concluding that RCW 34.05.510 dictates that judicial review under the APA provided the only avenue for relief and that RCW 7.24.146 instructs that the UDJA does not apply to state agency actions reviewable under the APA.

-2-

PRSM then moved for authorization to supplement the administrative record under RCW 34.05.562(1)(b). To support its motion, PRSM contended

> that there are many provisions in the SMP's 400 page plus new regulatory which are unduly oppressive, such as the provision that regulates every "human activity" in the shoreline (up to 200 feet inland from the ordinary high water mark). The SMP requires permits for any change to vegetation in one's yard. The SMP claims it is not retroactive (Section 1.3.5.2), but the fact that it regulates every human activity makes the non-retroactivity provision practically meaningless. The SMP includes contradictory language about what is permitted in terms of human activities, but then provides that the most restrictive regulation applies to wipe out provisions which appear to allow people to make reasonable use of their homes and yards.

PRSM sought to supplement the record with testimony from Kim Schaumburg, Barbara Phillips, and Barbara Robbins on matters relevant to its takings theories. Schaumburg, an environmental consultant would testify that "the science upon which the City relied relates to the impact of certain land uses on freshwater bodies" and "that such science should not be applied to salt water bodies." Further, Schaumburg would testify that "the science which the City uses to justify restrictions on land use, such as increased buffers from the water, arises from studies involving fresh water bodies and does not apply to salt water bodies." Phillips, "a person with a scientific background," would testify to "the flaw in using conceptual scientific data to support conclusions that form the basis for the extensive increase in regulation in the SMP." And Robbins, a landowner on Bainbridge Island, would provide testimony about the loss of value to her property. Specifically, Robbins

> whose property she has owned for decades has plummeted in value because of the SMP's restriction on vegetation removal. She has paid high taxes for decades on the reasonable expectation that the property would have views of the water and the Olympics only to find that the SMP has significantly reduced the value of her property. At the heart of the

protection from uncompensated taking and damaging of property in Article I, Section 16 of the Washington Constitution is the harm to the property owner. Ms. Robbins' testimony will demonstrate the reality of that harm.

PRSM also sought permission to offer testimony from Peter Brochvogel and Robbyn Meyers, to support its void for vagueness theory. Specifically, PRSM wanted to show that the SMP is "not decipherable by the average citizen." Brochvogel, a longtime architect on Bainbridge Island, and Meyer, a land-use consultant, would "explain why citizen's [sic] cannot determine the regulatory requirements of the SMP simply [by] reading its wording. Because of the sheer volume and complexity of the SMP, expert testimony will be of substantial assistance to the Court."

Finally, to support its First Amendment theory, PRSM offered testimony from Linda Young, "a citizen and petitioner herein, to testify as to how the SMP's provision giving City administrative staff control over vegetation and landscaping decisions interferes with freedom of expression."

The City and DOE opposed PRSM's motion to supplement, arguing that PRSM failed to show that any of the proffered supplementary evidence met the conditions for supplementation under RCW 34.05.562, the record contained ample evidence of the science used in SMP development, and supplementation was not needed to resolve the disputed facial challenges.

After oral argument, the superior court denied PRSM's request to supplement the record. The court found that the supplementary evidence was not needed to decide the disputed issues in this case.

This court granted PRSM's motion for discretionary review.

II.

This appeal is limited to PRSM's appeal of the superior court's decision denying PRSM's motion to supplement the administrative record with additional testimony.[1] "The admission or refusal of evidence is largely within the discretion of the trial court and will not be reversed on appeal absent a showing of a manifest abuse of discretion." Lund v. State Dep't of Ecology, 93 Wn. App. 329, 334, 969 P.3d 1072 (1998) (affirming the superior court's discretionary decision denying a request to supplement the record to present evidence and argument on constitutional issues not raised before the administrative tribunal). A trial court's decision is manifestly unreasonable if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'" Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

A.

Decisions of the growth management hearings boards must be appealed to the superior court under the APA. RCW 36.70A.300(5); Olympic Stewardship Foundation (OSF) v. State Envtl. & Land Use Hrgs. Office, 199 Wn. App. 668, 685, 399 P.3d 562 (2017), rev. denied, 189 Wn.2d 1040 (2018). In contrast to non-administrative proceedings where the trial court is the finder of fact, in administrative proceedings, "the facts are established at the administrative hearing and the superior court acts as an appellate court." U.S. West Commc'ns, Inc. v. Wash. Utils. & Transp. Comm'n, 134

---

[1] This is an interlocutory appeal of the trial court's decision denying PRSM's motion to supplement the record. Consequently, our decision does not address the merits of PRSM's constitutional claims. This opinion solely addresses whether the superior court abused its discretion by denying PRSM's motion to supplement the administrative record.

Wn.2d 48, 72, 949 P.2d 1321 (1997); Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994).

A court reviewing an agency order under the APA may overturn the action only if the challenger demonstrates that the order is invalid under at least one of the criteria set forth in RCW 34.05.570, including whether "the order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied." RCW 34.05.570(3)(a). Where the administrative board below does not have jurisdiction to hear constitutional claims, those claims may be raised for the first time before the superior court as an issue in the judicial review. Bayfield Res. Co. v. W. Wash. Growth Mgmt. Hrgs. Bd., 158 Wn. App. 866, 881 n.8, 244 P.3d 412 (2010).

Regardless of the issues raised in the APA appeal, "APA judicial review is limited to the record before the agency." Samson v. City of Bainbridge Island, 149 Wn. App. 33, 64, 202 P.3d 334 (2009) (citing RCW 34.05.566(1)). Accord, RCW 34.05.558 ("Judicial review of disputed issues of fact . . . must be confined to the agency record for judicial review as defined by this chapter"); Kittitas County v. Eastern Wash. Growth Mgmt. Hrgs. Bd., 172 Wn.2d 144, 155, 256 P.3d 1193 (2011); Lund v. State Dep't of Ecology, 93 Wn. App. 329, 333-34, 969 P.3d 1072 (1998) (review of constitutional challenges to shoreline regulation under the APA is limited to the Board's record and decision). While the APA allows the superior court to supplement the agency record, new evidence is admissible only under "highly limited circumstances" and must fit "squarely" within one of the statutory exceptions set forth in RCW 34.05.562. Motley-Motley v. Pollution Control Hrgs. Bd., 127 Wn. App. 62, 76, 110 P.3d 812 (2005);

Herman v. Shoreline Hrgs. Bd., 149 Wn. App. 444, 455-56, 204 P.3d 928 (2009); Samson, 149 Wn. App. at 64-65.

B.

PRSM first contends that the trial court erred in concluding that its constitutional claims were appellate in nature and thus bound by the APA. PRSM argues instead that the trial court should have exercised its original jurisdiction and accepted testimony and evidence outside of the APA's restriction to the record. We disagree.

PRSM cites little Washington precedence in support of its theory that the APA's strict limitation on new evidence is not applicable when the superior court is reviewing constitutional claims. PRSM quotes James v. Kitsap County, 154 Wn.2d 574, 588-89, 115 P.3d 286 (2005), for the proposition the "APA imposes only a 'procedural requirement[]' that PRSM litigate all claims subject to the Growth Board's authority to that agency 'before a superior court will exercise its original jurisdiction' over its constitutional claims." PRSM fails first, however, to recognize that James was a Land Use Petition Act (LUPA) case—not an APA case—and did not address supplementation of the administrative record under the APA. Second, what the James court held was "a LUPA action may invoke the original appellate jurisdiction of the superior court, but congruent with the explicit objectives of the legislature in enacting LUPA, parties must substantially comply with procedural requirements before a superior court will exercise its original jurisdiction." James, 154 Wn.2d 588-89. Here, while the superior court may have original appellate jurisdiction to consider PRSM's constitutional claims, the procedural requirements of the APA limit evidence to that introduced before the

administrative agency, or allowed by the superior court consistent with the narrow exceptions in RCW 34.05.562.

Contrary to PRSM's argument, the superior court did not err in concluding that it was acting as an appellate court in reviewing PRSM's claims—including its constitutional claims—under the APA. U.S. West, 134 Wn.2d at 72; Waste Management, 123 Wn.2d at 633; Lund, 93 Wn. App. at 333-34; OES, 199 Wn. App. at 705, 710-11.

## C.

PRSM argues that supplementation of the administrative record is appropriate under RCW 34.05.562(1)(b). We disagree.

Under the APA, the superior court has discretionary authority to supplement the agency record in three narrow circumstances, as defined in RCW 34.05.562:

> (1) The court may receive evidence in addition to that contained in the agency record for judicial review, only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding:
>
> (a) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action;
>
> (b) Unlawfulness of procedure or of decision-making process; or
>
> (c) Material fact in rule making, brief adjudications, or other proceedings not required to be determined on the agency record.

PRSM argues that supplementation of the administrative record is appropriate under RCW 34.05.562(1)(b). RCW 34.05.562(1)(b) provides the superior court discretion to supplement the record, only if the evidence relates to the "validity of the agency action at the time it was taken" and is needed to decide disputed issues regarding the "unlawfulness of procedure or of decision-making process." Thus, RCW

-8-

34.05.562(1)(b) allows the superior court to supplement evidence when a petitioner claims that the agency violated procedure during its decision-making process.

For example, in Batchelder v. City of Seattle, 77 Wn. App. 154, 159, 890 P.2d 25 (1995), the court analyzed whether the Shoreline Hearings Board erred when it allowed "segmentation" of the permitting process for a waterfront development project. Improper segmentation is an unlawful procedure or decision-making process under the SMA. Batchelder, 77 Wn. App. at 159. Specifically, "a single project may not be divided into segments for purposes of avoiding compliance with the SMA." Batchelder, 77 Wn. App. at 160 (citing Merkel v. Port of Brownsville, 8 Wn. App. 844, 509 P.2d 390 (1973)). Where an agency engages in some unlawful procedure, such as segmenting a project's permits, subsection (b) grants discretionary authority to the superior court to supplement the administrative record to decide those disputed issues. RCW 34.05.562(1)(b).

Here, PRSM offered evidence to support disputed issues of the constitutionality of the SMP. PRSM did not claim, however, that the evidence is necessary to decide whether the procedure used or the decision-making process of the Board violated due process, the APA, or another statute or regulation governing the Board's procedure. Because PRSM failed to present an argument of how the supplemental evidence was necessary to show that the Board's decision-making process or procedure was unlawful, the superior court did not abuse its discretion when it denied PRSM's request under RCW 34.05.562(1)(b).

D.

While PRSM does not specifically assert that the additional evidence should be admitted under RCW 34.05.562(1)(c), PRSM's argument asserts that the superior court abused its discretion by refusing its request to supplement the record because it needed to develop the factual record to support its constitutional claims.

RCW 34.05.562(1)(c) provides the superior court with discretion to supplement the record with "material facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record." It is also within the superior court's discretion to find that the facts proffered are not necessary to decide the disputed issues. The superior court did not err when it concluded that it did not need additional facts to decide PRSM's facial constitutional claims because its facial constitutional challenges can be decided without reference to additional facts. We address each of PRSM's claims.

1.

PRSM contends that the superior court abused its discretion by refusing to supplement the record with evidence demonstrating that gardening is expressive conduct and protected by the First Amendment.

"Facts are not essential for consideration of a facial challenge to a statute or ordinance based on First Amendment grounds." City of Seattle v. Webster, 115 Wn.2d 635, 640, 802 P.2d 1333 (1990). When a petitioner makes a facial constitutional challenge based on First Amendment grounds, the "constitutional analysis is made upon the language of the ordinance or statute itself." Webster, 115 Wn.2d at 640.

PRSM contends "the City's vegetation provisions constitute an overbroad and unnecessary restrain on expressive conduct." PRSM agrees that "much of this argument could be decided as a matter of law because, if a regulation burdens expression, then the government bears the burden of showing that the restriction is justified," but, because "the City and Ecology have indicated that they plan to challenge whether gardening and landscape design constitute expressive conduct—a mixed question of law and fact," additional evidence is necessary. PRSM sought to supplement the record with testimony from Young about "the personal choices that go into different gardening styles or themes and to explain how those decisions constitute expression."

PRSM fails to explain how this supplemental evidence meets the requirements of RCW 34.05.562(1)(c). PRSM contends that its First Amendment claims are mixed questions of law and fact, because no court has found that gardening is protected expressive conduct under the First Amendment. Young's opinion on the expressive nature of gardening, however, is in the administrative record below.[2] Young, an

---

[2] Young's comment in the record states

The First Amendment right of free expression means not only do people have the right to capture their personalities in their garden choices, but also a government cannot mandate – as the Soviet Union did for years, and the Bainbridge SMP is doing here – what kind of expression is aesthetically pleasing. . . .

The SMP takes the private property owner's right to engage in what a majority of people would consider free expression. Gardens can be an expression of peoples' personalities, their basic 'essence.' For many, gardening is a passion, a joy, a source of fresh fruits and vegetables for the table, as well as a source of an abundance of beautiful flowers for the house. Frequent trips to the nursery are adventures – looking to see what new plants they have. Countless hours are spent dreaming about how to landscape and make one's natural surroundings as beautiful as possible: flowers and plants bring such emotional comfort and joy to mankind! And, what constitutes a beautiful garden is, as they say, in the eye of the beholder. Even if they are 'non-indigenous,' people in the Pacific Northwest love their Japanese maple trees, their tulips and their rhododendrons (brought from China in the 19th century)! Now, with the SMP, these are all things of the past.

attorney, sent the City and DOE a 99-page legal analysis, which included a discussion of the First Amendment. PRSM has not explained why this evidence is insufficient for it to argue that gardening is expressive in nature and protected conduct under the First Amendment. PRSM contends that public comments are insufficient to lay the groundwork of a constitutional challenge, but fails to cite legal authority supporting this contention.

The superior court did not abuse its discretion in determining that PRSM's proffered evidence was not necessary to decide whether the SMP infringes First Amendment rights.

2.

PRSM contends that the superior court abused its discretion by refusing to allow PRSM to supplement the administrative record with material facts supporting its claim that the mandatory buffer is an unconstitutional exaction.

In a recent opinion, the Washington Supreme Court clarified that, for purposes of the Washington State Constitution's takings clause, Washington jurisprudence follows the United States Supreme Court definition of "regulatory takings" and any other authority to the contrary is overruled. Yim v. City of Seattle, No. 95813-1 (Wash. Nov. 14, 2019). There are two per se categorical takings for Fifth Amendment purposes: one, "where government requires an owner to suffer a permanent physical invasion of her property" and two, where regulations "completely deprive an owner of 'all economically beneficial uses' of her property." Yim, No. 95813-1, slip op. at 22. "If an alleged regulatory taking does not fit into either category, it must be considered on a

-12-

case-by-case basis in accordance with the Penn Central factors." Yim, No. 95813-1, slip op. at 22.

Both Nollan and Dolan were as-applied challenges and cited Penn Central for their underpinnings. Nollan v. Cal. Coastal Comm'n, 483 U.S 825, 852, n.6, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987); Dolan v. City of Tigard, 512 U.S. 374, 403-04, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). The nature of the Nollan/Dolan analysis is fact specific, and therefore, must be evaluated on a case-by-case basis and is not easily susceptible to a facial challenge.

The nexus rule from Nollan "permits only those regulations that are necessary to mitigate a specific adverse impact of a development proposal." Kitsap Alliance of Property Owners (KAPO) v. Central Puget Sound Growth Mgmt. Hrgs. Bd., 160 Wn. App. 250, 272, 255 P.3d 696 (2011). The concept of rough proportionality from Dolan "limits the extent of the mitigation measures to those that are roughly proportional to the impact they are designed to mitigate." KAPO, 160 Wn. App. at 272-73.

PRSM contends that the City failed to use the best available science and therefore the mandatory buffer is an unconstitutional exaction. PRSM cites Honesty in Envtl. Analysis and Leg. (HEAL) v. Central Puget Sound Growth Mgmt. Hrgs Bd., 96 Wn. App. 522, 527, 979 P.2d 864 (1999) for the proposition that critical area buffers must satisfy the Nollan/Dolan tests. In HEAL, the court held that "policies and regulations adopted under [the Growth Management Act (GMA)] must comply with the nexus and rough proportionality limits the United States Supreme Court has placed on government authority to impose conditions on development applications." HEAL, 96 Wn. App. at 527. If the best available science is not used to support the agency's

-13-

decision to designate critical area buffers, then "that decision will violate either the nexus or rough proportionality rules or both." HEAL, 96 Wn. App. at 537, 979 P.2d 864 (1999).

Here, PRSM contends that the testimony of Schaumburg, Phillips, and Robbins is necessary for the court to "determine whether the SMP's mandatory buffers are, in fact, limited to only that land necessary to mitigate for the impacts attributable to the burdened property."

PRSM fails to explain, however, why this testimony is not in the administrative record, since it contested the science before the Board. In its prehearing brief before the Board, PRSM argued, "The City is not in compliance with RCW 90.58.100(1) and WAC 173-26-201 by failing to identify and assemble the most current, accurate, and complete scientific and technical information available, by failing to consider the context, scope, magnitude, significance, and potential limitations of the scientific information, and by failing to make use of and incorporate all available science." In particular, PRSM claimed, "the science was also based on the impacts of use of upland property on freshwater bodies, such as rivers and lakes, and not on the salt water of the Puget Sound." The Board found that "Petitioners have failed to establish that the buffer widths proposed for the Bainbridge SMP were based on farm and feedlot data or were inappropriately based on freshwater rather than marine data" and that "they have not met their burden to establish a failure 'to assemble and appropriately consider technical and scientific information' in regard to buffer widths." PRSM has not explained why it needs further testimony from Schaumburg, Phillips, and Robbins to decide a disputed

issue that it briefed before the Board or how the testimony is different from the exhibits in the administrative record.

The superior court did not abuse its discretion when it determined that PRSM's proffered evidence was not necessary to decide whether the SMP is an unconstitutional taking or exaction.

3.

PRSM contends that the superior court abused its discretion by refusing to supplement the record to support its claim that the SMP contains vague and contradictory provisions rendering it indecipherable to the average citizen.

"When a challenged ordinance does not involve First Amendment interests, the ordinance is not properly evaluated for facial vagueness." Weden v. San Juan County, 135 Wn.2d 678, 708, 958 P.2d 273 (1998) abrogated by Yim v. City of Seattle, No. 96817-9 (Wash. Nov. 14, 2019). In Maynard v. Cartwright, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), the court held that "vagueness challenges to statutes not threatening First Amendment interests are examined in the light of the facts of the case at hand; the statute is judged on an as-applied basis." Thus, PRSM's facial constitutional vagueness challenge is likely not ripe because PRSM is not challenging the ordinance on an as-applied basis.

The superior court did not abuse its discretion when it determined that PRSM's proffered evidence was not necessary to decide whether the SMP is unconstitutionally vague.

We affirm.

Mann, ACJ

WE CONCUR: