STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re Stormwater NPDES Petition | } | Docket No. 14-1-07 Vtec |
| (Conservation Law Foundation Appeal) | } |  |
|  | } |  |

## Decision on Motion to Strike and Motion for Reconsideration

This matter arises out of a denial by the Vermont Agency of Natural Resources ("ANR") of a petition, originally filed in June 2003 by the Conservation Law Foundation ("CLF"), seeking a determination that (1) existing stormwater discharges into Potash, Englesby, Morehouse, Centennial, and Bartlett Brooks ("Brooks") contribute to violations of the Vermont Water Quality Standards, and (2) that such discharges, particularly those associated with or created by development, require National Pollution Discharge Elimination System ("NPDES") permits, pursuant to the federal Clean Water Act ("CWA") and its implementing state statutes.

Appellant CLF is represented by Christopher M. Kilian, Esq., and Anthony N.L. Iarrapino, Esq.; Appellee ANR was previously represented by Aaron Adler, Esq., and is now represented by Warren T. Coleman, Esq.; and the Water Resources Panel of the Vermont Natural Resources Board ("Water Panel") is represented by John H. Hasen, Esq., and Mark L. Lucas, Esq.

We previously granted summary judgment to CLF in a Decision and Judgment Order dated August 28, 2008 ("Decision"). ANR thereafter filed a motion for reconsideration of the Decision. The Water Panel filed a response in partial support of ANR's motion. CLF filed a motion in opposition, and ANR filed a reply. CLF also filed a motion to strike the Water Panel's brief, and the Water Panel responded in opposition. We address the motion to strike first, as this issue determines what is actually under reconsideration.

### I.      Motion to Strike

Before we can make any ruling on the pending motion, we must determine which parts of the Decision are eligible for reconsideration. Several of the parties have argued that this Court should regard some of the arguments for reconsideration as untimely. The Decision in this case was accompanied by a Judgment Order and therefore triggered the requirements of V.R.C.P. 59. Under V.R.C.P. 6(a), 59(b), and 59(e), a party has ten business days to file a motion for

reconsideration. ANR met that requirement here by filing its motion on September 12, 2008. No other party filed a motion for reconsideration within this time period. On September 29, 2008, the Water Panel filed what it called a "Reply Brief" in partial support of ANR's motion. On that same day, CLF filed a motion in opposition. All three parties (ANR, the Water Panel, and CLF) have used their briefs to recommend certain alterations to the Decision. CLF subsequently filed a motion to strike in which CLF argues that the Water Panel should not be allowed to make any recommended alterations. According to CLF, the Water Panel's brief is in fact its own motion for reconsideration and is therefore untimely. The Water Panel notes in response that CLF's argument is a double-edged sword that (if accepted) should lead this Court to ignore CLF's recommended alterations, since those were also filed in a reply brief and were therefore similarly untimely.

CLF's objection to the similarity of arguments offered by ANR and the Water Panel is understandable. However, we cannot accept CLF's characterization of the Water Panel's filing and therefore decline CLF's request to strike the Water Panel's reply brief.

Once ANR filed the initial motion for reconsideration within the requisite time period, all other parties had 15 days to file a memorandum in opposition. See V.R.C.P. 78(b)(1). Even if V.R.C.P. 78(b)(1) only refers to the filing of a "memorandum in opposition," we agree with the Water Panel that this does not mean that a party is restricted to opposing the original motion. Rather, we are directed to interpret this Rule, like all other procedural rules, in a way that will "secure the just, speedy, and inexpensive determination of every action." V.R.C.P. 1. It would hardly serve the interests of justice to ignore legal arguments that the Water Panel has properly put before us in response to ANR's motion.

Although the Water Panel's reply brief was in partial support of ANR's motion, it was not simply a reinforcement of ANR's arguments. Rather, the Water Panel provided its own view of the reconsideration motion and made its own suggestions on how our Decision should be altered. Indeed, it is these independent suggestions that CLF now asks this Court to ignore. We believe it to be entirely appropriate for a party to make its own suggested alterations to a Decision when that party files its brief in reply to a motion for reconsideration. Such suggestions are not untimely. The only applicable time limit here is on the filing of the first motion—once that motion has been timely filed, this Court should look to all arguments presented, both for and in opposition to the pending reconsideration request. Indeed, the primary purpose of motions for

reconsideration is to provide the Court with the opportunity to use its inherent powers "'to correct manifest errors of law or fact.'" In re Vanishing Brook Subdiv., No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1). In making any such corrections, this Court should not ignore arguments that are raised in reply briefs, just as the Court should not ignore meritorious arguments made in the original motion for reconsideration.

Once ANR decided to ask this Court to reopen our previous Decision and make alterations to it, it was reasonable for the other parties to then provide their responses for how the Decision should be altered. Each party made its suggestions in a timely manner in accord with the Vermont Rules of Civil Procedure.[1] We have thus considered all of the arguments in all of the briefs. CLF's motion to strike is therefore **DENIED**.

## II. Motion for Reconsideration

Although we have determined that we can consider all of the reconsideration arguments made by all of the parties, we analyze these arguments under a very restrictive standard of review. A motion to reconsider allows the court to modify a decision in order to relieve a party from "the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enters., 164 Vt. 582, 588 (1996). The decision to grant relief in a motion to reconsider is "committed to the [trial] court's sound discretion." Id. In ruling on such motions, the court must review earlier decisions "for the presence of legal error or the absence of factual support." Town of Hartford v. Wood, Nos. 72-3-00 Vtec, 121-7-03 Vtec, 185-10-04 Vtec, 81-4-07 Vtec, & 176-8-07 Vtec, slip op. at 8 (Vt. Envtl. Ct. Mar. 6, 2008) (Durkin, J.) (citing Garrow v. Garrow, 150 Vt. 426, 428 (1988)). If amendment of the judgment serves no useful purpose, the motion will be denied. S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.) (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

Granting a motion to reconsider is "an extraordinary remedy that should be used sparingly." Id.; In re Bouldin Camp – Noble Road, No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007) (Wright, J.). Disagreement between the moving parties and the Court is not

---

[1] Indeed, even if certain filings had been untimely, which they were not, we could still find it appropriate to address them in the interests of justice. See Shahi v. Ascend Fin. Svcs., Inc., 2006 VT 29, ¶ 3 n.*, 179 Vt. 434 (upholding on due process grounds a trial court's decision to consider a memorandum that was untimely filed).

grounds for reconsideration. In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.). Motions to reconsider should not be used to repeat arguments that have been raised and rejected by the Court in the earlier decision. Id. at 1. Similarly, motions to reconsider should not be used to present evidence that could have been presented before judgment. Rubin, 164 Vt. at 589; S. Vill. Cmtys., LLC, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

The limited functions of a motion for reconsideration are "to 'correct manifest errors of law or fact' on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law." In re Vanishing Brook Subdiv., No. 223-10-07 Vtec, slip op. at 4 (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1). Motions to reconsider can therefore serve a useful purpose, particularly when amending a decision will allow a trial court to reverse an error it made and thereby reduce the expense of prosecuting an appeal to correct that error. Nevertheless, because the purposes of these motions are so narrow, motions to reconsider are rarely granted. S. Vill. Cmtys., LLC, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

Under this strict standard of review, ANR cannot meet the requirements for amending our previous Decision. All of the points that ANR raises are either arguments that this Court has already considered and decided or arguments that (even if ANR is correct) do not change the outcome of the Decision. Nevertheless, because the parties' post-judgment filings reveal a number of misunderstandings about our previous Decision and about issues that were decided by the Vermont Supreme Court in a related proceeding, we believe it prudent to take this opportunity to address some of those issues.

We first note that our Decision stated that ANR had made the factual determination that certain discharges from point sources are "identified and mapped as contributing" to water quality violations in the impaired Brooks at issue and are currently unregulated under state stormwater laws. Decision at 35. We noted that ANR had compiled "specific Brook-by-impaired-Brook factual findings," id. at 26, that ANR had "the multi-layered, site specific data to determine precisely the characteristics and potential loading of stormwater from point sources into the impaired Brooks," id. at 28, and that ANR had "analyzed the specific pollutants discharged via the stormwater," id. Even when viewed in the light most favorable to ANR,

4

ANR's own data concluded that as a factual matter the discharges at issue "load more pollutants into the impaired Brooks than the existing remedial efforts remove." Id. at 33. In our de novo review of the definition of "contribute," we held that this "undisputed factual" data necessitates the legal conclusion that the identified discharges (subject to a de minimis exception) "contribute" to water quality violations. Id. at 33–35.

ANR and the Water Panel now argue that ANR has never concluded that the identified discharges contribute to such violations. We recognize that this creates a confusing situation— the Court has stated that ANR concluded that certain discharges contribute; ANR maintains that it never made such a determination. This confusion appears to arise from the fact that ANR believes that it has to make some sort of declaration before its data can reveal factual conclusions. (See ANR's Reply to Opp'n to Its Mot. to Alter or Amend and Reconsider ("ANR's Reply") at 6 (arguing that ANR has the discretion to decline to take the final step of declaring whether such discharges contribute to water quality violations).) According to ANR, its data does not conclude anything until ANR decides that it does. We disagree. No declaration is needed for it to become clear that ANR's data is un-refuted in its factual determination that certain discharges contribute to water quality violations.

Our legal determination here should not be interpreted as a bar to any subsequent ANR analysis that might find that other remedial measures diminish or negate the pollution contributed by a specific discharge. But we specifically reject ANR's proposition that the undisputed facts cannot lead to a legal conclusion until ANR declares it.

We are troubled by ANR's understanding of its discretion to make the "contribute" analysis. According to ANR, even after it has compiled a wealth of data on contributing discharges, it still has the discretion to decline to take the final step in the "contribute" analysis. (See id.) Whatever discretion ANR might have in this matter, it does not include the ability to decide to do nothing under the CWA. In addition to ANR's statutory obligation to undergo all stages of the "contribute" analysis, the Vermont Supreme Court has specifically directed ANR "to undertake th[is] requisite analysis." In re Stormwater NPDES Petition, 2006 VT 91, ¶ 30, 180 Vt. 261. This language is unambiguous and does not allow ANR the discretion to decide not to undertake the requisite analysis. Nevertheless, ANR seems to have taken that position. (See ANR's Reply at 6; see also Water Panel's Reply Brief at 2 ("The Wennberg Letter states that ANR had not—and would not—undertake the residual designation analysis which the Supreme

5

Court ordered.").) Fortunately, despite ANR's stated position about what it would and would not do, ANR did exercise its expertise to take all of the measures needed to determine whether certain stormwater discharges contribute to water quality violations, and this data shows without refutation that the discharges at issue do indeed contribute to such violations. As noted above, ANR might not have declared that it found that the discharges contributed to water quality violations, but its data nevertheless concluded as much.

We recognize that ANR is currently in the process of promulgating and implementing a number of measures—including stormwater assessments or measurements known as Total Maximum Daily Loads ("TMDLs")—that aim to deter pollution from entering this State's waters. Indeed, we have no reason to doubt ANR's claim that the implementation of "state-of-the-art stormwater TMDLs for the brooks at issue is the action likely to result in achievement of water quality standards in those brooks." (ANR's Reply at 3.) Thus, it is not surprising that ANR steadfastly resists attempts by CLF to force ANR to evaluate the need for NPDES permits, a measure that ANR believes to be unlikely to lead to cleaner waters. (See id. at 25.) ANR posits that its choice of stormwater TMDLs over NPDES permits represents a "science-based view on the appropriate efforts . . . to meet water quality standards." (Id.; accord id. at 3 ("Science in fact shows that the action ordered by the Court is unlikely to achieve those goals.").)

We have no reason to doubt that ANR believes stormwater TMDLs to be a superior method of achieving water quality standards. The deficiency in ANR's argument is that even if ANR is correct, and even if ANR had presented the Court, in response to CLF's summary judgment motion, with vast amounts of scientific evidence showing that TMDL implementation had occurred and was already having the intended effect of reducing the flow of pollutants by stormwater, ANR would still not be relieved of its obligation to exercise its residual designation authority ("RDA") to determine whether the specifically identified discharges were responsible for a net pollution contribution that would necessitate NPDES permits.

We highlight the word "net" in the previous sentence because it appears from their briefing that both ANR and the Water Panel have ignored its import in our prior Decision. We used the term "net" in our prior Decision to emphasize that the conclusions ANR already reached that specific point sources contribute does not mark the end of ANR's analysis. Remedial efforts may negate or render de minimis the pollution contributions from specific, already identified sources. But given the passage of years since our Supreme Court's last directive to ANR, we

6

cannot agree that ANR has the legal authority to either ignore its RDA obligations or further delay its final determination of whether a stormwater source contributes a <u>net</u> pollution contribution. In this regard, we again emphasize that we find no legal foundation for ANR's claim that it has the authority to take into account what benefit <u>future</u> state permitting or remedial efforts may have in reducing pollution. If a state permit or remedial measure has not yet been actually implemented, we cannot discern how its possible impact may act as a credit, particularly since ANR asserts only that it might implement such measures in the future.

As we held in our Decision, the stormwater "TMDLs are forward-looking, are not fully implemented, and do not cover all discharges of stormwater." Decision at 32. Although we hope that ANR is correct that once these TMDLs are fully implemented they will solve or contribute to solving the water quality problems at issue here, the possibility of this future benefit is not relevant to the question of whether ANR must act now to fulfill its RDA obligations. Let us be clear here: it is not just "CLF's own legal theory that future remedial efforts are irrelevant," (ANR's Reply at 21); rather, that is a legal conclusion that this Court arrived at after a careful analysis of applicable federal and state law. In an effort to clearly express this legal conclusion, we noted that "to the extent that discharges are proposed to be covered by the state stormwater law—that is, to be regulated at a future date—they are to be treated as unregulated." Decision at 34.

In holding that future remedial efforts do not relieve ANR of its current legal duties under the CWA, our Decision reflects the Vermont Supreme Court's conclusion that "neither federal nor state law contemplates that Act 140 [the state stormwater management program] will serve as a substitute for the exercise of residual designation authority under the CWA." <u>In re Stormwater NPDES Petition</u>, 2006 VT 91, ¶ 21. Indeed, according to this language from the Supreme Court's ruling, even if the TMDLs were already fully implemented, ANR would still have an independent obligation to evaluate whether NPDES permits were needed, even in light of remedial measures that will then already be implemented. See <u>id</u>.

ANR places great emphasis on the fact that statutes should be interpreted in light of their purposes. We agree. The purpose of the CWA "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). As noted earlier, ANR sincerely believes that this purpose is better served by "the systematic, comprehensive manner represented by the TMDL process, a process designed to actually achieve the goals of

7

the CWA." (ANR's Reply at 25.) Although we believe that ANR, like CLF, is committed to cleaning up the waterways that Vermonters and those who visit our State so much appreciate, we worry that ANR's approach ignores its legal duties. The deficiency is that ANR presents a false dichotomy; we find no legal foundation for the proposition that TMDLs and NPDES permits are mutually exclusive. Indeed, our Supreme Court explicitly rejected this type of either/or approach when it stated that TMDLs (or other actions taken under the state stormwater management program) are not a substitute for NPDES permits. See In re Stormwater NPDES Petition, 2006 VT 91, ¶ 21; see also N. Plains Res. Council v. Fidelity Exploration & Dev. Co., 325 F.3d 1155, 1165 (9th Cir. 2003) ("[I]t cannot possibly be urged that . . . state law in itself can contradict or limit the scope of the CWA, for that would run squarely afoul of our Constitution's Supremacy Clause . . . ."); W. Va. Highlands Conservancy, Inc. v. Huffman, 588 F. Supp. 2d 678, 692 (N.D. W. Va. 2009) ("The Supremacy Clause bars any argument that the [state agency's] compliance with [state water protection] laws shields it from the requirements of the federal CWA."). Thus, although ANR can and must continue with its systematic TMDL process, such efforts must be done in addition to (not instead of) the proper exercise of its residual designation authority.

The use of multiple layers of protection from stormwater pollution (the TMDL process and NPDES permits) to keep pollutants out of State waters is more in line with the purposes of the CWA than ANR's suggestion of relying only upon a possible future use of the TMDL process. ANR has yet to present us with a legal foundation for its assertion that it has the right to defer or ignore its RDA responsibilities under the CWA, particularly when the state-managed remediation processes to which it refers have not yet been fully implemented.

ANR's motion to reconsider leads us to make several other clarifications to ensure that the parties understand our earlier Decision. First, we must sincerely apologize for including references to the phosphorous loading impairment of Lake Champlain and to "ANR's allegedly partial enforcement of existing general permits." Decision at 29. Although we introduced those issues as "relevant factors . . . that we must consider," id., the bulk of our Decision makes clear that these references did not actually affect the ultimate result. In fact, the Decision itself later states that the efficacy of ANR's current enforcement programs "is not at issue here." Id. at 33 n.35.

Although we erred in making these references, we decline to amend the Decision to remove them, since they are so brief and of no substantive effect on the final conclusions. In

making this determination and noting our error, we are guided by the general principle that where amendment of the judgment would serve no useful purpose, we should decline to make such an amendment. S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1). Again, to the extent that we misled the parties by using the phrase "must consider" for something that did not actually affect the ultimate result of the Decision, we sincerely apologize.

We must also apologize for misstating the doctrine of preemption with regard to dual regulation under the state stormwater law and the federal CWA NPDES permit program. See Decision at 34. As ANR correctly notes in its motion to reconsider, if there is a conflict between a state stormwater permit and an NPDES permit, the more stringent permit condition controls. See 33 U.S.C. § 1370. Indeed, other parts of our Decision recognized this very principle. See, e.g., Decision at 23 (discussing the related concept of cooperative federalism). While we appreciate ANR bringing this issue to our attention, we note that the misstatement we made in the original Decision was followed by a recognition that this "issue is not squarely before the Court at this time." Decision at 24. Thus, as ANR itself recognizes, this was merely dicta. We therefore decline to amend the judgment, since doing so would serve no useful purpose. S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).

The only other issue we need to address in this motion for reconsideration is the claim that this Court's Decision violated the separation of powers by exercising de novo review in this appeal.[2] ANR bases this constitutional argument on language from the Vermont Supreme Court's ruling in Chioffi v. Winooski Zoning Board, 151 Vt. 9 (1989), which implies that the constitutional separation of powers precludes "'essentially administrative'" decisions from being reviewed de novo. Id. at 12 (citing Francisco v. Bd. of Dirs., 537 P.2d 789, 791 (Wash. 1975)).

We begin this analysis by noting exactly what it is that ANR is asking this Court to do. ANR claims that it would be unconstitutional to read 10 V.S.A. § 8504(h) as allowing de novo

---

[2] ANR also asserts that this Court failed to show its determination on the pending CLF petition the proper deference, given ANR's undisputed expertise in the field of stormwater assessment. ANR's argument here confuses the proper deference shown to its determinations in separate permit proceedings with the necessary de novo review that must be conducted when ANR's own determination has been challenged in an appeal. We note here that ANR's attack of de novo review of this petition by the Water Resources Board was previously considered and rejected by our Supreme Court. See In re Stormwater NPDES Petition, 2006 VT 91, ¶¶ 16–17.

9

review in this appeal. Thus, ANR suggests that we construe 10 V.S.A. § 8504(h) as inapplicable to this case.

We are directed to construe statutes in a way that meets constitutional requirements. Glidden v. Conley, 2003 VT 12, ¶ 11, 175 Vt. 111. Thus, before determining whether 10 V.S.A. § 8504(h) violates the constitutional separation of powers, we must first review all possible readings that would make it constitutionally acceptable. See id. Nevertheless, we cannot ignore the plain language of the statute. Id.; see also Martin v. State Agency of Transp. Dep't of Motor Vehicles, 2003 VT 14, ¶ 9, 175 Vt. 80 ("If a statute is unambiguous, an agency cannot insulate it from constitutional attack by adopting a new interpretation unsupported by the statutory language."). Here, we do not construe the plain language of the statute as having the constitutional deficiencies that ANR suggests.

As explained in our earlier Decision, 10 V.S.A. § 8504(h) unambiguously directs this Court to review this case de novo. See Decision at 21. This Court has previously addressed the issue of proper deference to ANR determinations and de novo review in a case involving an appeal from an ANR decision regarding a permit amendment, where we noted the following:

> [T]he statutory provision under which this appeal is taken is entirely unambiguous that it is de novo. 10 V.S.A. § 8504(h). Unlike in judicial review of administrative agency action in the federal system or in some other states, no presumption is afforded the fact that the permit amendment was issued by the ANR, and the Court is not charged with determining whether the ANR determination is supported by substantial evidence on the record as a whole.

> The fact that the appeal is de novo casts no aspersions on the capability, hard work, or careful consideration given to these or any other proceedings at the ANR level. It was the legislature, not this [C]ourt, that established the de novo standard applicable to cases in which the ANR is the decisionmaker appealed from; it was equally a de novo standard when such appeals were heard by the Water Resources Board under former 10 V.S.A. § 1269. The de novo standard in these appeals may be contrasted with the deference given ANR technical determinations in Act 250 land use cases, 10 V.S.A. § 8504(i), or the deference given ANR technical pollution abatement or environmental restoration directives in enforcement cases. Compare 10 V.S.A. § 8012(b)(2) (ANR orders which must be remanded to the agency if the Court disagrees with the remedial provisions) with 10 V.S.A. § 8012(b)(3), (4), (5) (those which may be modified or determined anew by the Court).

In re Entergy Nuclear/Vermont Yankee Thermal Discharge Permit Amendment, No. 89-4-06 Vtec, slip op. at 3–4 (Vt. Envtl. Ct. June 6, 2007) (Wright, J.).

Here, although we are addressing CLF's appeal of an ANR decision on a petition, rather than a decision on a permit application, the statute is still "entirely unambiguous" that we must review the pending ANR determination on CLF's petition on a de novo basis. Id. We simply cannot construe 10 V.S.A. § 8504(h) in any other way. As a result, we must assess the constitutionality of 10 V.S.A. § 8504(h) as it is written.

In our review of the constitutionality of 10 V.S.A. § 8504(h), we begin with the presumption that the statute is constitutionally sound: "In the absence of 'clear and irrefragable evidence that [the statute] infringes the paramount law,' we will not strike down a statute as unconstitutional." Glidden v. Conley, 2003 VT 12, ¶ 11 (modification in original) (citing In re Proceedings Concerning a Neglected Child, 129 Vt. 234, 240–41 (1971)). Our Supreme Court has further noted that when a constitutional argument is rooted in the separation-of-powers doctrine, such arguments face a particularly steep uphill battle because this constitutional requirement is "a relatively forgiving standard" and is "tolerant of . . . overlapping institutional arrangements." State v. Nelson, 170 Vt. 125, 128 (1999). Thus, only an egregious usurpation of another branch's powers would create a constitutional violation of this doctrine. See id.

In light of this standard and the heavy burden placed upon ANR in making its constitutional challenge, we decline to find that 10 V.S.A. § 8504(h) is unconstitutional. We find that the legislature has created a statutory scheme that appropriately reflects the constitutional separation of powers. For instance, decisions on how to enforce and prosecute land use laws and permits—a primarily executive function—do not receive de novo review. See 10 V.S.A. § 8503(a). The legislature also chose to exclude policy and rulemaking decisions from de novo review. See id. Rulemaking appears to be the type of "'essentially administrative'" decision that our Supreme Court stated should not be reviewed de novo. Chioffi, 151 Vt. at 12 (citing Francisco, 537 P.2d at 791). In an earlier proceeding in this case, the Supreme Court held that the petition at issue here was not a request for rulemaking. In re Stormwater NPDES Petition, 2006 VT 91, ¶¶ 16–17 (agreeing with the Water Resource Board's ruling on this issue). Reviewing this case de novo therefore does not violate Chioffi's warning against de novo review of "'essentially administrative'" decisions. Chioffi, 151 Vt. at 12 (citing Francisco, 537 P.2d at 791).

As noted above, ANR bases its argument on Chioffi, 151 Vt. 9. In fact, the actual holding of Chioffi was that zoning board decisions involve "the quasi-judicial function . . . [of]

11

applying the law to the facts," which the Court found to be a "traditional judicial role" and therefore amenable to de novo review.  Id. at 13; accord, e.g., City of Fort Smith v. McCutchen, 2008 WL 598157, at *2 (Ark. Mar. 6, 2008) (noting that de novo review is consistent with the separation of powers when the underlying action represents "not an enactment, but an application of . . . regulations" (citing City of Jonesboro v. Vuncannon, 837 S.W.2d 286 (Ark. 1992))).  We similarly find here that ANR was applying the law to the facts when it ruled on CLF's petition, and ANR's ruling therefore represented a quasi-judicial proceeding and not an "'essentially administrative'" decision.  Chioffi, 151 Vt. at 12 (citing Francisco, 537 P.2d at 791).  Indeed, the Water Resources Board held in an earlier proceeding that the denial of CLF's petition represented a "contested case" and not a request to promulgate policy or rulemaking, and the Vermont Supreme Court upheld that ruling.  In re Stormwater NPDES Petition, 2006 VT 91, ¶¶ 16–17.  Given that the Supreme Court "agree[d] with the Board's ruling" that ANR's denial of CLF's petition was a "'contested case,'" involving "a 'proceeding in which the legal rights, duties, or privileges of a party are required by law to be determined by the Board,'" we must also find that this prior proceeding was quasi-judicial.  Id. (citing Water Resources Board Rules of Procedure 2.A(4)(a) (defining the "contested case" requirement for Water Resources Board jurisdiction)).  We therefore find no constitutional deficiencies in the de novo review provisions of 10 V.S.A. § 8504(h) and we decline to strike down those statutory provisions.

We understand that ANR is unhappy with our earlier Decision, and we take ANR at its word that it is working to address water quality issues throughout this State.  Nevertheless, our previous Decision remains legally sound.  Although minor errors were made in our August 28, 2008 Decision, we conclude that amendment of that Decision is not warranted and would serve no useful purpose.  This Court has previously noted that when it would serve no useful purpose to amend a judgment, a motion for reconsideration should be denied.  S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.1).  ANR's motion for reconsideration is therefore **DENIED**.

### Conclusion

For all of the reasons more fully discussed above, we **DENY** CLF's motion to strike the Water Panel's reply brief, and we note that we have reviewed all of the post-judgment briefs and given them their due consideration.  Our legal analysis leads us to **DENY** ANR's motion for reconsideration.  To the extent that the Water Panel and CLF have also asked this Court to make

12

amendments to our earlier Decision, we also decline to do so. The previous Decision and Judgment Order remain in effect. In light of the automatic stay caused by these post-judgment filings, ANR now has 90 days from the date of today's Decision to complete the notification process described in our August 28, 2008 Decision and Judgment Order.

This proceeding, previously concluded by this Court's August 28, 2008 Decision and Judgment Order, remains closed.

Done at Newfane, Vermont this 18th day of February 2009.

_____
Thomas S. Durkin, Environmental Judge